[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15642
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 9, 2010
JOHN LEY
CLERK

Agency Nos. A099-548-125, A099-548-126

ILIANNA EVANGELINA GUTIERREZ-GRANDA,
JOSE GREGORIO ALVAREZ-ALDANA,

                                                                Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                                Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 9, 2010)

Before TJOFLAT, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Ilianna Evangelina Gutierrez-Granda and Jose Gregorio Alvarez-Aldana,

citizens of Venezuela, petition this court for review of the Board of Immigration Appeal (BIA's) order affirming the Immigration Judge's (IJ's) denial of Gutierrez-Granda's application for asylum, withholding of removal under the Immigration and Nationality Act (INA), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT). We deny the petition.

## I. Background

In December 2005, Gutierrez-Granda filed an affirmative application for asylum, withholding of removal, and CAT relief with the Department of Homeland Security, naming Alvarez-Aldana, her husband, as a derivative beneficiary.[1] In a statement attached to her application, Gutierrez-Granda explained that she had been persecuted by the Bolivarian Circles—a pro-Chavez group—for her opposition to Venezuelan President Hugo Chavez's educational curriculum.

At an asylum hearing, Gutierrez-Granda testified to the following. As an active member of the anti-Chavez Accion Democratica political party, she had supported an August 2004 national referendum to recall Chavez. After the

---

[1] For ease of reference, our opinion will refer only to Gutierrez-Granda, although she did name her husband as a derivative beneficiary. Our discussion of Gutierrez-Granda's asylum claim applies equally to Alvarez-Aldana. He is not entitled to derivative benefits with respect to Gutierrez-Granda's requests for withholding of removal and CAT relief because those forms of relief do not include derivative rights. *See Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007) (withholding of removal statute does not create derivative rights); 8 C.F.R. § 208.16(c) (regulation governing claims for CAT relief does not mention derivative rights).

referendum failed, she and her husband were placed on the "Tascon List," a list reportedly used by the Chavez regime to retaliate against supporters of the recall.

In November 2004, Gutierrez-Granda was hired as an English teacher at a public high school. Later that month, she refused to attend a workshop about a new Chavez-sponsored study plan that was to be implemented in the school. A few days later, two women got into Gutierrez-Granda's car and told her that her opposition was not welcome. The women pulled her hair, called her "nasty and vulgar" names, and told her that the Bolivarian Circles would not put up with her disobedience. The women eventually got out of the car and ordered Gutierrez-Granda to drive away.

In March 2005, after she missed a mandatory meeting at the school, three men claiming to have weapons forced Gutierrez-Granda into her car, made her drive for half an hour, and then ordered her out of the vehicle. They explained that the Zone Chief for Education would not allow her to oppose the government in that district. One of the men held Gutierrez-Granda by her elbows while the second man tore her blouse and touched her breasts. The second man told Gutierrez-Granda that there were other things that she could provide if she was not ready to work for the revolution. At that point, the third man stated that it was time to leave and the men walked away.

Finally, in May 2005, Gutierrez-Granda received a phone call from a woman

who told her that the government would not tolerate her opposition. The woman told Gutierrez-Granda that she could "go on living far from there or die." Instead of returning to the school, Gutierrez-Granda left for the United States in June 2005.

After hearing her testimony, the IJ denied her application. The IJ found Gutierrez-Granda's testimony credible but concluded that she had not shown past persecution because the incidents were "harassment." The IJ made no explicit finding whether Gutierrez-Granda had a well-founded fear of future persecution. The IJ also concluded that she could not satisfy the higher standard for withholding of removal. Finally, the IJ concluded that Gutierrez-Granda was not entitled to CAT relief because there was no evidence that a government official had acquiesced in her mistreatment.

On appeal, the BIA agreed with the IJ that the incidents described by Gutierrez-Granda were not severe enough to constitute past persecution. The BIA also rejected Gutierrez-Granda's contention that she had a well-founded fear of future persecution because her name was on the Tascon List. The BIA stated that the documentary evidence did not establish a practice of persecution against pro-democracy Venezuelans who are opposed to President Chavez's policies. Because Gutierrez-Granda had not established her eligibility for asylum, the BIA concluded that she was likewise unable to meet the higher standard for withholding of removal. Finally, the BIA agreed with the IJ's conclusion that Gutierrez-Granda

4

was not eligible for CAT relief.  Gutierrez-Granda petitions this court for review.

**II. Discussion**

Because the BIA issued its own opinion, we review only the BIA's decision. *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010).  We review the BIA's factual findings to determine whether they are supported by substantial evidence.  *Id.*  We "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).  We may reverse the BIA's factual findings only when the record compels a reversal. *Diallo*, 596 F.3d at 1332.

*1. Asylum and withholding of removal*

Under the INA, the Attorney General or Secretary of Homeland Security may grant asylum to a petitioner, *see* 8 U.S.C. § 1158(b)(1)(A), if the alien can prove that "he or she has suffered past persecution or because he or she has a well-founded fear of future persecution."  8 C.F.R. § 208.13(b).  In determining whether an applicant has suffered past persecution, we examine the cumulative effect of all the incidents described by the applicant.  *Diallo*, 596 F.3d at 1333.

To establish eligibility for withholding of removal, an applicant must establish that her life or freedom would be threatened in her country of origin on account of a statutorily protected ground.  8 U.S.C. § 1231(b)(3)(A).  The applicant

5

must demonstrate that she would more likely than not be persecuted if returned to her country of origin. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005). The standard for withholding of removal is more stringent than the standard for asylum. *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1292 (11th Cir. 2006).

Here, Gutierrez-Granda first argues that the BIA erred in failing to find that she suffered past persecution. She contends that the three incidents of mistreatment she suffered were "serious and imminent death threats." In support, she argues that her case is similar to *Mejia v. U.S. Attorney General*, 498 F.3d 1253 (11th Cir. 2007).

We must determine whether the record compels a finding of past persecution. "[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." *Sepulveda,* 401 F.3d at 1231(quotations and alteration omitted). We are more likely to conclude that the record compels a finding of past persecution when an applicant faced imminent and credible death threats. *Compare Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1237 (11th Cir. 2006) (written death threat "was an example of harassment and intimidation, but not persecution"), *with Diallo*, 596 F.3d at 1333-34 ("A credible death threat by a person who has the immediate ability to act on it constitutes persecution regardless

6

of whether the threat is successfully carried out."). We are also more likely to conclude that the record compels a finding of past persecution when the applicant has suffered physical injury along with death threats. *Compare Sepulveda*, 401 F.3d at 1231(repeated death threats and a bombing at the alien's place of employment, which did not injure her, did not constitute past persecution), *with Delgado v. U. S. Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007) (threats at gunpoint and severe beating constituted past persecution) *and Ruiz v. Gonzales*, 479 F.3d 762, 766 (11th Cir. 2007) (past persecution found where guerilla group "beat [the alien] on two occasions, telephoned threats to him, and held him against his will for 18 days").

In this case, Gutierrez-Granda faced one explicit death threat and two incidents of mistreatment over a seven-month period. We must decide whether these three incidents *compel* a finding of past persecution. Standing alone, none of these incidents rises to the level of persecution. Neither the incident in which the women entered her car nor the kidnaping incident constitute past persecution because brief detentions and minor physical attacks do not satisfy the requirement. *See Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1171, 1174 (11th Cir. 2008) (upholding BIA's finding of no persecution where alien was detained for 36 hours and beaten by police officers but suffered only scratches and bruises). Furthermore, the anonymous death threat did not have the credibility or imminence

7

necessary to rise to the level of past persecution. *See Silva*, 448 F.3d at 1237 (holding that a written death threat "was an example of harassment and intimidation, but not persecution").

Taking these incidents cumulatively, it is not clear from the record that these incidents were extreme enough to constitute persecution. There was no evidence that any of the people who harassed or threatened her had ever killed or injured anyone. Furthermore, none of these incidents involved serious physical injury. Although the conduct of the men who abducted her was reprehensible, her attackers released her without injury. This case, therefore, is distinguishable from *Mejia*, in which the petitioner suffered a broken nose as well as repeated and specific death threats. *See Mejia*, 498 F.3d at 1257. Thus, although clearly disturbing, these incidents were not extreme enough to compel the conclusion that Gutierrez-Granda suffered past persecution.

Second, Gutierrez-Granda argues that she has a well-founded fear of future persecution because it is reasonably probable that she will suffer both economic persecution and death threats if she returns to Venezuela. Gutierrez-Granda's fear of future persecution must be both subjectively genuine and objectively reasonable. *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1007 (11th Cir. 2008). "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution." *Id*. (quotation marks omitted). "The

objective prong can be fulfilled by establishing that the applicant has a good reason to fear future persecution." *Id*. (quotation marks omitted).

Although Gutierrez-Granda may have a subjective fear that she will be persecuted if she returns to Venezuela, the record does not compel the conclusion that she has an objectively reasonable fear of persecution. First, there is no evidence in the record suggesting that the individuals who threatened Gutierrez-Granda would follow through with those threats if she returned to Venezuela. Thus, there is substantial evidence supporting the BIA's conclusion that she did not have an objectively reasonable fear of physical persecution. Second, the record does not compel the conclusion that Gutierrez-Granda would suffer economic persecution if she returned to Venezuela: she was hired as a public school teacher despite her placement on the Tascon List and was not fired from this job despite her persistent opposition to the new pro-Chavez curriculum.

Finally, Gutierrez-Granda argues that she qualifies for withholding of removal. Because the record does not compel a reversal of the BIA's order denying her petition for asylum, this withholding-of-removal claim fails as well. *See Zheng*, 451 F.3d 1287.

## 2. *CAT relief*

To establish eligibility for CAT relief, the applicant must demonstrate that it is more likely than not that she would be tortured if she were removed to the

designated country of removal.  8 C.F.R. § 208.16(c)(2).  Gutierrez-Granda

contends that she is entitled to CAT relief because threats of imminent death

constitute a form of torture under the Convention and the relevant Country Reports

establish that the Venezuelan government has committed severe human rights

violations.

Gutierrez-Granda's argument is meritless.  Because Gutierrez-Granda was

unable to demonstrate a well-founded fear of persecution, she cannot satisfy the

standard warranting relief under CAT.  *See Al Najjar v. Ashcroft*, 257 F.3d 1262,

1303 (11th Cir. 2001) ("The burden of proof for an applicant seeking withholding

of removal under the Convention, like that for an applicant seeking withholding of

removal under the statute, is higher than the burden imposed on an asylum

applicant.").

## 3. *Remand for new evidence*

Gutierrez-Granda argues that we should remand her case to allow her to

present new evidence that her sister has served in the United States Navy and has

filed an I-130 visa petition on her behalf.  She contends that *Kucana v. Holder*, 130

S.Ct. 827 (2010), supports her request for a remand.

We may not remand a final order of removal for consideration of new

evidence that was not presented to the IJ or the BIA.  8 U.S.C. § 1252(b)(4)(A).

*Kucana* does not hold otherwise; it holds that a court of appeals has jurisdiction to

10

review the BIA's denial of a motion to reopen. Because Gutierrez-Granda did not file a motion to reopen, we cannot remand her case under *Kucana*.

Accordingly, we deny Gutierrez-Granda's petition for review.

**PETITION DENIED.**