[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 19, 2010
JOHN LEY
CLERK

No. 08-16507

_____

Agency No. A098-854-993

THIERNO DIALLO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 19, 2010)

Before TJOFLAT, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Thierno Diallo, a native of Guinea, petitions this court for review of the

Board of Immigration Appeals' ("BIA") affirmance of the Immigration Judge's

("IJ") order of removal. In this case, we consider whether a credible death threat made in person by one with the ability to carry out that threat rises to the level of persecution. Because we conclude that it does, we vacate and remand to the BIA for further factual findings.

I. Background

Diallo entered the United States from the Netherlands in 2004 as part of the Visa Waiver Program. In 2005, Diallo was referred to the IJ for an "asylum only" determination after he violated the terms of the Visa Waiver Program by remaining in the United States after the expiration of the waiver, 8 U.S.C. § 1187(a), (b).[1] In his asylum application, Diallo alleged that he was arrested at a meeting of the Ready People of Guinea("RPG"),[2] he and his father were taken from the meeting and detained eleven hours before Diallo was able to escape, his brother was killed by soldiers, and his father's whereabouts were unknown.

At the hearing, Diallo testified that he attended an RPG meeting with his father and brother to oppose the Guinean government in February 2001. After armed soldiers arrived at the meeting to arrest the protestors, a fight between the

---

[1] Diallo's unexhausted and abandoned CAT claims are not properly before us. *See Fernandez-Bernal v. U.S. Att'y Gen.*, 257 F.3d 1304, 1317 n.13 (11th Cir. 2001) (holding that claims not raised before the BIA are not exhausted); *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 (11th Cir. 2005) (explaining that claims not raised before this court are abandoned).

[2] The State Department Country Reports identify the RPG as the Rally of People of Guinea.

soldiers and the RPG members erupted. Diallo's brother was killed, and Diallo and his father were beaten. The soldiers then took the protestors, including Diallo and his father, to another location, where they were photographed, registered, detained, and warned that they would be executed the following day. Before the soldiers could carry out their threat, Diallo escaped. He went to a friend, who treated his injuries and helped him flee Guinea. Diallo went to Sierra Leone, where he worked as a landscaper and in the diamond mines. He left Sierra Leone in 2004 due to violence in that country.

In support of his asylum application, Diallo submitted several articles concerning the violence in Guinea between soldiers and protestors, which had resulted in the deaths of a number of protestors. He also submitted the State Department Country Reports. According to the 2005 Report, soldiers were responsible for killing protestors and beating civilians. The Report also noted that members of the RPG had been arrested and detained in 2004. The Report stated, however, that the government had permitted opposition rallies more liberally than in past years, and that a RPG leader had been able to travel throughout the region without government interference. Diallo also submitted reports from Amnesty International, including a 2006 report stating that security forces were responsible for several deaths in 1998 and 2001, and that opposition leaders had been arrested and protestors had been beaten in 1998.

3

The IJ denied relief, finding, *inter alia*, that the single incident of a brief detention and minor beating did not rise to the level of persecution. The IJ then found that Diallo did not have an objectively reasonable well-founded fear of future persecution because he could have relocated internally. Diallo appealed to the BIA, which concluded, relevant to this appeal, that the alleged incident did not rise to the level of persecution.[3] The BIA did not address the IJ's relocation finding.

In his petition for review, Diallo challenges the IJ's and BIA's conclusions that he failed to establish past persecution or a well-founded fear of future persecution. He further asserts that the IJ erroneously concluded that he could have relocated within Guinea.

II. Standard of Review

Where, as here, the BIA issues its own opinion and does not adopt the IJ's opinion, we review the BIA's decision. *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007). To the extent that the decision was based on a legal determination, our review is *de novo*. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1254 (11th Cir. 2006); *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 817 (11th Cir. 2004). Factual determinations are reviewed under the substantial evidence

---

[3] The BIA did not affirm the IJ's decision regarding the timeliness of the application, the adverse credibility determination, the denial of discretionary relief, or the IJ's finding that there was no nexus between the events and a statutorily protected ground.

4

test, and we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (quotation and internal marks omitted). Additionally, "[u]nder the substantial evidence test, we review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Ruiz*, 440 F.3d at 1255 (citing *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*)). Thus, "a finding of fact will be reversed only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Id.* (quotation omitted).

III. Analysis

The Attorney General has discretion to grant asylum if an alien meets the INA's definition of "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The INA defines "refugee" as follows:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . political opinion.

8 U.S.C. § 1101(a)(42)(A)-(B). The asylum applicant bears the burden of proving refugee status. *Al Najjar*, 257 F.3d at 1284. To meet this burden, the alien must, with specific and credible evidence, establish (1) past persecution on account of a

5

statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution. 8 C.F.R. § 208.13(a)-(b); *Al Najjar*, 257 F.3d at 1287. "[O]nly in a rare case does the record compel the conclusion that an applicant for asylum has suffered past persecution or has a well-founded fear of future persecution." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1239 (11th Cir. 2006).

If the alien establishes past persecution, he is presumed to have a well-founded fear of future persecution unless the government can rebut the presumption by showing, by a preponderance of the evidence, that: (1) there has been a fundamental change in circumstances in the applicant's country of nationality such that the applicant no longer has a well-founded fear of persecution because of a statutorily-protected ground; or (2) the applicant could avoid future persecution by relocating to another part of the applicant's country of nationality and, under all the circumstances, it would be reasonable to expect the applicant to do so. 8 C.F.R. § 208.13(b)(1)(i)(A)-(B) (2005).

Not all "exceptional treatment" constitutes persecution. *Zheng v. U.S. Att'y General*, 451 F.3d 1287, 1290 (11th Cir. 2006). Rather, persecution is "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." *Id.* (quotation omitted). "In determining whether an alien has suffered past

6

persecution, the IJ [and the BIA] must consider the cumulative effects of the incidents." *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007). A brief detention coupled with minor bruising does not establish persecution. *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1174 (11th Cir. 2008).

By contrast, "intentionally being shot at in a moving car multiple times" constitutes past persecution, regardless of whether the attack is successful. *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1233 (11th Cir. 2007); *cf. De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1008-10 (11th Cir. 2008) (finding persecution where alien received numerous death threats, was dragged by her hair out of her vehicle, and was later kidnaped and beaten); *Niftaliev v. U.S. Att'y Gen.*, 504 F.3d 1211, 1217 (11th Cir. 2007) (finding that the cumulative effect of numerous beatings, arrests, searches, and interrogations, culminating in a fifteen-day, food-deprived detention, compelled a finding of past persecution); *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1257-58 (11th Cir. 2007) (concluding the petitioner suffered persecution where he was the target of attempted attacks over an eighteen-month period, received multiple death threats, and was physically attacked twice, once when a large rock was thrown at him and once when members of the FARC broke his nose with the butt of a rifle); *Delgado*, 487 F.3d at 859-61 (finding persecution based on cumulative effect of two beatings, continued threatening phone calls, and two instances of the alien's car being vandalized with

7

political graffiti); *Ruiz v. U.S. Att'y Gen.*, 479 F.3d 762, 763-64 (11th Cir. 2007) (concluding that petitioner suffered past persecution where the petitioner received threatening phone calls, was beaten on two separate occasions, and was kidnaped for eighteen days by the FARC, during which time he also suffered severe beatings).

Here, Diallo suffered a minor beating and was detained for eleven hours. This, by itself, would not compel us to reverse the BIA's decision. "We may consider a threatening act against another as evidence that the petitioner suffered persecution where that act concomitantly threatens the petitioner." *De Santamaria*, 525 F.3d at 1009 n.7. In this case, Diallo was also threatened with death by the same soldiers who had already killed his brother. He was able to avoid the same fate as his brother by escaping.

Moreover, the violence accompanying a credible death threat need not successfully accomplish its goal. A credible death threat by a person who has the immediate ability to act on it constitutes persecution regardless of whether the threat is successfully carried out. *Sanchez Jimenez*, 492 F.3d at 1233. In Diallo's case, we are presented with such a set of facts, and on these facts, we are compelled to conclude that Diallo suffered past persecution. We can see no reason why Diallo should have had to stay in his country–awaiting his death at the hands of the soldiers who killed his brother–to succeed on his claim of past persecution.

8

To the contrary, we conclude that the government's failure to carry out its credible death threat does not defeat Diallo's claim of past persecution.

Our inquiry does not end there, however. Past persecution creates a presumption of a well-founded fear of future persecution, which the government may rebut with evidence of changed country conditions or the ability to relocate. Here, the IJ considered whether Diallo could have relocated, a finding that Diallo challenged before the BIA but which the BIA did not address. Because our review is limited to the BIA's decision, and the question of relocation is a factual one, we vacate and remand with instructions for the BIA to consider whether the government can rebut the presumption of future persecution with evidence of changed country conditions or Diallo's ability to relocate.[4] *Gonzales v. Thomas*, 547 U.S. 183 (2006); *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002); *Calle v. U.S. Att'y Gen.*, 504 F.3d 1324, 1330 (11th Cir. 2007).

**VACATED and REMANDED**.

---

[4] Because we remand on this ground, we do not consider Diallo's claim of future persecution.