[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15953
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 23, 2010
JOHN LEY
CLERK

Agency No. A095-886-022

FLOREL MAURICE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 23, 2010)

Before TJOFLAT, EDMONDSON and BIRCH, Circuit Judges.

PER CURIAM:

Petitioner Florel Maurice is a native and citizen of Haiti.  He arrived in the

United States, in Ft. Lauderdale, without inspection on April 6, 2002. On May 28, 2002, he applied for asylum on account of political opinion and membership in a particular social group.

In a statement attached to his asylum application, Petitioner noted that in May 2000, he was physically pushed by men who wanted him to vote "in their favor." Thereafter, in February 2001, he was victimized at a demonstration. In March 2001, the Lavalas party terrorized him and others at another political demonstration and opened fire on the crowd. In December 2001, a false coup d'etat took place and President Aristide pretended that his regime was being overthrown. A friend, who was a policeman, advised him to leave Haiti because the Lavalas regime would kill him if it detected him. He followed his friend's advice and came to the United States.

The Department of Homeland Security commenced removal proceedings on February 15, 2002, by filing a Notice to Appear which charged Petitioner as an alien present in the United States without authorization. He conceded his removability at an immigration hearing on June 28, 2005, and on February 28, 2008, an Immigration Judge ("IJ") heard his application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture ("CAT"). At the hearing, Petitioner augmented the statement attached to his asylum application, testifying to the

2

following. In 2000, members of Lavalas prevented him from voting in an election; a "man pushed" him while he was waiting in line to vote. In February 2001, he attended a demonstration, with thousands of people, protesting against Aristide. "Many men" later asked him whether he had attended the demonstration and whether he was against Lavalas. Though he denied attending the demonstration, the men said he was lying, pushed him to the ground, kicked him, and said they would kill him. In March 2001, he attended a demonstration, with over a thousand people, and a group of unknown men armed with weapons shot into the crowd. He fled. Three men caught up with him, accused him of being against the Aristide government, and threw him to the ground. In October 2001, he joined Mochrenha, a group that espoused a change for political stability, and attended its meetings. In December 2001, his policeman friend told him that his name was on the government's "list" and that he would be arrested. So, he fled to another town and stayed with a friend until departing for the United States by boat. He said he feared that he would die if returned to Haiti, his Lavalas "enemies are still there."

At the conclusion of the hearing, the IJ found that Petitioner had not shown past persecution or a well-founded fear of future persecution, denied his application in full, and ordered his removal. He appealed this IJ's decision to the Board of Immigration Appeals ("BIA"), which independently concluded that he failed to make out a case for asylum, withholding of removal, or CAT protection.

3

Petitioner now seeks review in this court. For the reasons stated in the margin, our review is limited to the BIA's asylum decision.[1] As to that decision, Petitioner argues that substantial evidence does not support the BIA's finding that he failed to establish past persecution or a well-founded fear of future persecution.[2]

I.

Where, as here, the BIA issues its own decision, we review that decision, "except to the extent that [it] expressly adopts the IJ's decision." *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275 (11th Cir. 2009) (quotation omitted). In considering the BIA's decision, we review the BIA's legal conclusions *de novo*, *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001), and its findings of fact under the substantial evidence test. We must affirm such findings "if [they are] supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1283-84 (quotation omitted). The substantial evidence test is "deferential" and does not allow "re-weigh[ing] the evidence from scratch." *Mazariegos v. U.S. Att'y Gen.*, 241 F.3d 1320, 1323 (11th Cir. 2001)

---

[1] In his opening brief, Petitioner failed to argue that the BIA erred in affirming the IJ's denial of withholding of removal and CAT relief. The failure to argue an issue on appeal operates to waive the issue. *See Sepulveda v. U. S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.") (citing *United States v. Cunningham*, 161 F.3d 1343, 1344 (11th Cir. 1998). The same is true with respect to the BIA's dismissal of Petitioner's hurricane-based humanitarian claim.

[2] Part of Petitioner's argument in support of his asylum claim is that the IJ erred in finding his testimony not credible. We do not consider this credibility issue because the BIA assumed that Petitioner's testimony was credible and issued its own decision on the merits.

(quotations omitted). "To reverse the . . . fact findings, we must find that the record not only supports reversal, but compels it." *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004).

An alien who arrives in, or is present in, the United States may apply for asylum. INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General or Secretary of the Department of Homeland Security has discretion to grant asylum if the alien meets the INA's definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The INA defines a "refugee" as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. *Al Najjar*, 257 F.3d at 1284. Accordingly, he must, with specific credible evidence, establish (1) past persecution on account of a statutorily protected factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such persecution. 8 C.F.R.

§ 208.13(b); *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006).

"Demonstrating such a connection requires the alien to present specific, detailed facts showing a good reason to fear that he . . . will be *singled out* for persecution on account of" a statutory factor. *Al Najjar*, 257 F.3d at 1287 (quotations omitted).

While the INA does not define persecution, we have held that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda v. U. S. Att'y Gen.*, 401 F.3d 1226, 1331 (11th Cir. 2005) (quotations omitted). "In determining whether an alien has suffered past persecution, the IJ [or BIA] must consider the cumulative effect of the allegedly persecutory incidents." *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1008 (11th Cir. 2008). We previously have refused to reverse the BIA in scenarios involving minimal violence, including where (1) a petitioner was "arrested while participating in a student demonstration, interrogated and beaten for five hours, and detained for four days, but . . . did not prove that he suffered any physical harm," and state authorities monitored him after his release and ordered him to appear before a university disciplinary committee and a state court, *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1353 (11th Cir. 2009); (2) a petitioner was threatened with arrest by students who lacked the power to carry out that threat, "in conjunction with [a] minor beating" that merely resulted in "scratches and bruises," *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1174 (11th Cir.

2008); and (3) a petitioner received "menacing telephone calls," including death threats, based on her role as a political organizer, and the restaurant where she worked was bombed, *Sepulveda*, 401 F.3d at 1231.

Nevertheless, we have rejected "a rigid requirement of physical injury" and have held that "attempted murder is persecution." *De Santamaria*, 525 F.3d at 1008; *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1233-34 (11th Cir. 2007) (involving a series of "intensif[ying]" threats, an attempted kidnapping of the petitioner's daughter, and an incident where guerillas "intentionally shot at him in his moving car"). Similarly, "a credible death threat made in person by one with the ability to carry out that threat" rises to the level of persecution. *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1331, 1333-34 (11th Cir. 2010). In *Diallo*, armed soldiers interrupted a political meeting, killed Diallo's brother during the resulting fight, and beat him and his father. *Id.* at 1331. They "photographed, registered, [and] detained [Diallo and the other protesters], and warned that they would be executed the following day," but Diallo escaped. *Id.*

If an alien has established past persecution based on a protected ground, he is entitled to a rebuttable presumption that he will face persecution upon his return to that country, unless the government shows by a preponderance of the evidence that the country's conditions have changed such that the applicant's life or freedom would no longer be threatened upon his removal or that the alien could relocate

7

within the country and it would be reasonable to expect him to do so. 8 C.F.R. § 208.13(b); *Al Najjar*, 257 F.3d at 1287. Otherwise, to establish a well-founded fear of future persecution, an applicant must demonstrate that his fear of future persecution is "subjectively genuine and objectively reasonable." *Al Najjar*, 257 F.3d at 1289-90. "The subjective component is generally satisfied by the applicant's credible testimony that [she]genuinely fears persecution." *Id.* at 1289. "[T]he objective prong can be fulfilled either by establishing past persecution or that he . . . has a 'good reason to fear future persecution.'" *Id.* (citation omitted).

Threats of future violence based on prior political activity are insufficient to compel a finding of future persecution where the evidence does not indicate that the petitioner's notoriety would outlast his or her absence. *Sepulveda*, 401 F.3d at 1232. We have held that a petitioner's claim of future persecution "was contradicted by his testimony that his son and his parents [had] remained unharmed in the region of Colombia where [he] allegedly was threatened." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1259 (11th Cir. 2006).

We agree with the BIA that the record does not compel a finding that Petitioner suffered past persecution based on his involvement in the Mochrena group and his opposition to Lavalas, the political party of former President Aristide. The cumulative total of the incidents personal to Petitioner—including (a) brief and isolated instances of interrogation and minor physical coercion by

8

Lavalas supporters, which he did not report to the police and which did not produce any serious injuries, (b) a death threat that was not clearly "credible" and made by individuals "with the ability to carry [it] out," and (c) notice that the government had placed him on an arrest list—lacks the extremity present in the situations where we previously have reversed the BIA.

In addition, the record does not compel the conclusion that Petitioner possesses an objectively reasonable fear of future persecution, because (a) he remained in Haiti unharmed for almost a year after the death threat, (b) background reports showed that President Aristide resigned in 2004 and did not reflect any incidents of anti-Lavalas violence following President Rene Preval's relatively peaceful election in 2006, and (c) Petitioner's aunts and cousins continued to reside in Haiti unharmed and have not indicated that anyone was trying to arrest him. Accordingly, substantial evidence supports the denial of asylum, and we deny the petition for review in this respect.

PETITION DISMISSED, IN PART, AND DENIED, IN PART.