[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 17, 2010
JOHN LEY
CLERK

No. 10-10737
Non-Argument Calendar
_____

Agency No. A088-147-517


JAIRO JOSUE RAMIREZ-RAMOS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 17, 2010)

Before EDMONDSON, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Jairo Josue Ramirez Ramos, a native and citizen of Guatemala proceeding

*pro se*, petitions for review of the Board of Immigration Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") final order of removal and denying his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). On appeal, Ramirez Ramos argues that the BIA erred in ruling that his asylum application was untimely because he established extraordinary circumstances to excuse the one-year filing deadline. He also asserts that he established past persecution based on a protected ground. He explains that he and his parents were attacked by guerillas because they were Mayan and because his parents were members of the civil patrol. Ramirez Ramos contends that the cumulative mistreatment that his family suffered at the hands of the guerillas rose to the level of persecution. Finally, Ramirez Ramos asserts that indigenous persons in Guatemala have been the "victims of brutal torture and attacks by both the guerillas and the Guatemalan government." For the reasons set forth below, we deny the petition for review.

I.

The Department of Homeland Security initiated removal proceeds by issuing a Notice to Appear to Ramirez Ramos. The notice charged that Ramirez

Ramos was a Guatemalan citizen who entered the United States in 1999 without being admitted or paroled.

At an asylum hearing, Ramirez Ramos explained that he left Guatemala in 1999 after he was attacked by a group of armed men while walking home from school. The men approached him and asked him to bring them food. After he refused to do so, they grabbed him by the neck, threw him on the ground, and proceeded to hit and kick him. The attackers told Ramirez Ramos that he would "be beaten again and even worse" if they ever saw him again. Because the attackers were well-armed, Ramirez Ramos believed that they were former guerillas who joined the "Maras" gangs. Ramirez Ramos did not receive any medical attention for his injuries. He was 14 years old at the time of this attack.

Ramirez Ramos also testified concerning an earlier incident that occurred in 1988. At the time, his mother and father served in the civil patrol, which protected the village from guerillas. One day, some of the guerillas came to the family's house. Ramirez Ramos's mother, sister, and brother managed to flee, but Ramirez Ramos remained inside the house with his father. His father was "badly beaten" by the guerillas because they knew that he worked for the civil patrol. The guerillas intended to kill or kidnap Ramirez Ramos's father, but the neighbors saved him by shooting at the guerillas. His father remained in bed for three days

after the attack but did not seek medical attention. Ramirez Ramos himself was not harmed by the guerillas.

Following the 1988 attack, the family moved to another village. They did not experience any further problems with the guerillas until the 1999 incident where Ramirez Ramos was beaten. On cross-examination, Ramirez Ramos acknowledged that his mother, father, and sister continued to live in Guatemala and had not been harmed since he left the country.

In addition to his testimony, Ramirez Ramos also submitted a personal statement and a declaration from his mother. These documents were largely consistent with his testimony at the hearing. In his statement, Ramirez Ramos asserted that the guerillas "threatened and abused" his family on account of their Mayan ancestry. His mother indicated that the guerillas threatened, abused, and laughed at her family because they were Mayan and did not know how to speak or read Spanish.

The IJ issued an oral decision denying Ramirez Ramos's application. First, the IJ concluded that Ramirez Ramos's asylum application was untimely and that there were no exceptional circumstances that would excuse the late filing. With respect to withholding of removal, the IJ concluded that Ramirez Ramos's testimony, although credible, did not establish that he suffered past persecution.

4

In particular, the IJ found that neither the 1988 attack on Ramirez Ramos's father nor the 1999 incident were Ramirez Ramos was beaten were serious enough to constitute persecution. The IJ also determined that the 1999 incident was not connected to one of the protected grounds for withholding of removal. The IJ further concluded that Ramirez Ramos could avoid any future threat to his life or freedom by relocating within Guatemala. Finally, the IJ determined that Ramirez Ramos was not entitled to CAT relief because he had not introduced any evidence of past torture, and had not shown that he would be tortured by, or with the acquiescence of, the Guatemalan government.

After Ramirez Ramos appealed, the BIA affirmed the IJ's decision. First, the BIA concluded that Ramirez Ramos's asylum application was time-barred. Next, the BIA determined that Ramirez Ramos was not entitled to withholding of removal for the reasons given by the IJ. The BIA concluded that Ramirez Ramos had not linked his fear of being attacked by gang members or former guerillas to one of the protected grounds under the INA. In addition, the BIA observed that persecution is an extreme concept that requires more than mere harassment. Ramirez Ramos now petitions for review of the BIA's decision.

## II.

As an initial matter, the government argues that we lack jurisdiction to

5

review the BIA's finding that Ramirez Ramos's asylum application was untimely. We review our own subject matter jurisdiction *de novo*. *Amaya-Artunduaga v. U.S. Att'y Gen*., 463 F.3d 1247, 1250 (11th Cir. 2006). Under the INA, we lack jurisdiction to review the BIA's determination that an asylum application was not filed within the applicable one-year deadline. INA § 208(a)(2), (a)(3), 8 U.S.C. § 1158(a)(2), (a)(3). In addition, we may not review the agency's conclusion that the alien failed to show extraordinary circumstances that would excuse an untimely filing. *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007).

Thus, we lack jurisdiction to review the BIA's finding that Ramirez Ramos failed to establish extraordinary circumstances to excuse the untimely filing of his asylum application. Therefore, we will dismiss the petition for review to the extent that it challenges the denial of Ramirez Ramos's asylum application. We will now turn to the merits of Ramirez Ramos's application for withholding of removal.

III.

Where, as here, the BIA issues its own opinion, we review only the BIA's decision, except to the extent that the BIA adopts the IJ's reasoning. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). In this case, the BIA issued its own decision, but it also indicated that Ramirez Ramos had failed to establish

6

eligibility for withholding of removal or the reasons given by the IJ. Because the BIA adopted the IJ's reasoning, we are reviewing both agency decisions.

We review the BIA's factual findings to determine whether they are supported by substantial evidence. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*). Under the substantial evidence standard, "we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* at 1027. We may reverse the BIA's factual findings only when the record compels a reversal. *Id.*

To qualify for withholding of removal under the INA, an alien must show that his life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). The alien has the burden of proving that it is "more likely than not" that he will be persecuted upon returning to his country. *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006).

An alien applying for withholding of removal may satisfy his burden of proof in one of two ways. *Tan*, 446 F.3d at 1375. First, the alien may show that he suffered past persecution in his country based on a protected ground. *Id.* Second, the alien may establish a future threat to life or freedom by showing that it

7

is more likely than not that he would be persecuted upon removal due to a protected ground. *Id.* An alien may establish a future threat to life or freedom either by showing that he will be singled out for persecution based on a protected ground, or by demonstrating a pattern or practice of persecution in his country against persons who share the same protected characteristic. 8 C.F.R. § 208.16(b)(2)(i) and (ii). An alien cannot demonstrate a future threat to life or freedom if the alien can avoid the threat by relocating to another part of the proposed country of removal. *Tan*, 446 F.3d at 1375. Evidence that an alien's family continues to reside unharmed in the country of removal supports a conclusion that a threat may be avoided by relocation. *See Ruiz* v. *U.S. Att'y Gen.*, 440 F.3d 1247, 1259 (11th Cir. 2006) (evidence that petitioner's son and parents continued to live in Colombia contradicted his claim that he could not avoid persecution through internal relocation).

We have explained that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations and alteration omitted). Brief detentions or minor physical attacks do not rise to the level of persecution. *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1333 (11th Cir. 2010). In determining whether

8

the alien suffered persecution, we examine the cumulative effects of all of the incidents that he described. *Id.*

In this case, substantial evidence supports the BIA's finding that Ramirez Ramos failed to demonstrate past persecution based on a protected ground. First, with respect to the 1999 incident where Ramirez Ramos was beaten by ex-guerillas, the evidence showed that Ramirez Ramos did not require medical attention and did not receive any lasting injuries. Therefore, the record does not compel a finding that this incident rose to the level of persecution. *See Diallo*, 596 F.3d at 1333. Moreover, Ramirez Ramos failed to connect the 1999 attack to one of the protected grounds for withholding of removal. He indicated the guerillas targeted him because he refused to give them food, rather than because he was Mayan or because his parents were members of the civil patrol.

Substantial evidence also supports the IJ's finding that the 1988 incident where guerillas attacked Ramirez Ramos's father did not rise to the level of persecution. Although his father needed to remain in bed for three days, he did not need any medical assistance. Therefore, the record does not compel the conclusion that the beating was so severe as to constitute persecution. *See Diallo*, 596 F.3d at 1333. In addition, although Ramirez Ramos and his mother stated in their declarations that the guerillas "harassed" and "abused" the family because of

9

their Mayan ancestry, they did not describe any specific instances where the guerillas specifically targeted the family because they were Mayan, and generalized assertions of harassment are insufficient to establish persecution. *See Sepulveda,* 401 F.3d at 1231.

Also, substantial evidence supports the BIA's conclusion that Ramirez Ramos will not face a future threat to his life or freedom if he returns to Guatemala. Ramirez Ramos testified that his family members continue to live in Guatemala, and they have not been harmed since he left the country in 1999. Because Ramirez Ramos's family members have continued to safely reside in Guatemala, the record does not compel the conclusion that Ramirez Ramos's life or freedom will more likely than not be threatened if he is removed to that country. *See Ruiz*, 440 F.3d at 1259.

Finally, to the extent that Ramirez Ramos now argues that there is a pattern or practice of discrimination against Mayans in Guatemala, he failed to raise a pattern-or-practice claim before the BIA. Therefore, we lack jurisdiction to consider that argument. *See Amaya-Artunduaga*, 463 F.3d at 1250 (explaining that we may not review claims that the petitioner did not present to the BIA). Accordingly, the BIA's denial of withholding of removal is supported by substantial evidence.

IV.

In his initial brief, while Ramirez Ramos does not specifically mention the CAT, he does assert that indigenous persons in Guatemala have been the "victims of brutal torture and attacks by both the guerillas and the Guatemalan government." The government contends that Ramirez Ramos has waived his claim for CAT relief because he has not offered any arguments with respect to that issue in his brief. Given Ramirez Ramos's status as a *pro se* litigant, however, we will construe his comment regarding torture as a challenge to the agency's denial of CAT relief.

As noted above, we review the BIA's factual determinations to determine whether they are supported by substantial evidence. *See Adefemi*, 386 F.3d at 1026-27. To establish eligibility for CAT relief, the applicant must demonstrate that it is more likely than not that he would be tortured if he is removed to the designated country of removal. 8 C.F.R. § 208.16(c)(2). Torture is defined as

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

11

8 C.F.R. § 208.18(a)(1).

Here, Ramirez Ramos did not present any evidence that he would be tortured by, or with the acquiescence of, Guatemalan government officials. Although he asserts in his brief that the Guatemalan government has been complicit in the torture of the indigenous population, all of the evidence of mistreatment that he presented at the asylum hearing related to anti-government guerillas and criminal gangs. Therefore, the record does not compel a conclusion that Ramirez Ramos would more likely than not be tortured by, or with the acquiescence of, government officials if he is removed to Guatemala.

Accordingly, we dismiss the petition for review with respect to Ramirez Ramos's asylum claim, and we deny the petition with respect to his claims for withholding of removal and CAT relief.

**PETITION DISMISSED IN PART, DENIED IN PART.**