[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10596
Non-Argument Calendar
_____

Agency No. A098-854-993

THIERNO DIALLO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 27, 2018)

Before NEWSOM, BRANCH, and HULL, Circuit Judges.

PER CURIAM:

Thierno Diallo, a native of Guinea, seeks review of the order of the Board of

Immigration Appeals ("BIA") that affirmed the denial of his application for asylum

and withholding of removal. Because substantial evidence supports the BIA's finding that country conditions have changed such that Diallo no longer has a well-founded fear of future persecution, we deny his petition for review.

## I. BACKGROUND

Diallo was born in Guinea and is a member of the Fula tribe, the largest ethnic group in Guinea. In 2001, Diallo was 16 years old when, along with his father and older brother, he attended a meeting of the RPG, a Guinean political party led by Alpha Condé that opposed the ruling dictator of Guinea, Lansana Conté. Armed soldiers arrived to arrest the attendees and a fight broke out. Diallo's brother was killed; Diallo and his father were beaten, detained, and told they would be killed the following day. Diallo escaped before the soldiers could make good on their threat. He fled first to Sierra Leone, then to The Gambia, before making his way to the Netherlands.

Diallo entered the United States in 2004, using a fraudulent Dutch passport under the Visa Waiver Program. After his authorization expired, he applied for asylum and withholding of removal, claiming persecution "by the regime of Lansana Conte . . . because we supported the opposition party that opposed Conte's regime." In 2007, following an evidentiary hearing, an immigration judge ("IJ") denied relief. The BIA affirmed that decision in part in 2008. In 2010, our Court vacated the decision of the BIA, finding that Diallo had established past

2

persecution on account of political opinion, and remanded with instructions "to consider whether the government can rebut the presumption of future persecution with evidence of changed country conditions or Diallo's ability to relocate." *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1334 (11th Cir. 2010).

On remand, the BIA remanded to the IJ on the government's motion. The IJ conducted a hearing in 2011, but several continuances delayed its resolution. In 2017, after another hearing to evaluate the government's assertion of changed country conditions, the IJ denied relief. In 2018, the BIA affirmed. Diallo again petitions for review of the BIA's decision.

## II.  STANDARDS

Our review is of the decision of the BIA, since it did not expressly adopt the IJ's decision. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). We review the BIA's conclusions of law *de novo* and its factual determinations for substantial evidence. *Id.* The "highly deferential" substantial evidence test requires us to view the record evidence in the light most favorable to the BIA's decision and draw all reasonable inferences in its favor. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc). The BIA's decision must stand if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (quoting *Lorisme v. INS*, 129 F.3d 1441, 1444–45 (11th Cir.

1997)). To reverse the BIA's findings of fact, we must find that the record not only supports reversal, but compels it. *Adefemi*, 386 F.3d at 1027.

Asylum is discretionary relief available to refugees: aliens who are unable or unwilling to return to their home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *id.* § 1158(b)(1). The asylum applicant bears the burden of proving that he is a refugee. *Id.* § 1158(b)(1)(B)(i). To do so based on a well-founded fear of future persecution, he must prove a subjectively genuine and objectively reasonable fear of persecution on account of a protected ground. *Al Najjar*, 257 F.3d at 1289. Alternatively, he can show past persecution and thereby create a rebuttable presumption of a well-founded fear of future persecution. *Kazemzadeh*, 577 F.3d at 1351. To rebut that presumption, the government must demonstrate by a preponderance of the evidence either that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution," or that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality." *Id.* at 1351–52 (quoting 8 C.F.R. § 208.13(b)(1)(i)(A) & (B)).

Withholding of removal is nondiscretionary relief available to aliens who establish that their life or freedom would be threatened in their home country

4

because of their "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The standard for withholding of removal is more stringent than the well-founded fear of future persecution standard required for asylum. *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 891 (11th Cir. 2007). The alien must show that there is a clear probability of persecution if the alien is returned to his home country. *Id.* An alien who cannot meet the lower standard for asylum necessarily fails to establish eligibility for withholding of removal. *Id.*

## III.  DISCUSSION

Substantial evidence supports the BIA's factual finding that circumstances in Guinea have fundamentally changed such that Diallo no longer has a well-founded fear of persecution on account of political opinion. He was persecuted in 2001 for associating with the RPG when that party was in opposition to the Guinean government. *Diallo*, 596 F.3d at 1331. In his asylum application, he wrote that he "fear[ed] going back to Guinea at this time, as the same regime that killed my brother and threatened my life is still in power." According to substantial evidence, that regime is no longer in power.

In 2010, the longtime leader of the RPG, Alpha Condé, was democratically elected president of Guinea. The U.S. State Department's 2014 Human Rights Report, upon which the BIA was entitled to rely heavily, *see Imelda v. U.S. Att'y*

5

*Gen.*, 611 F.3d 724, 728 (11th Cir. 2010), supports the government's contention that, as a result of this change in regime, Diallo is not likely to face future persecution. In contrast to a horrific 2009 incident in which pro-democracy opposition to the junta government was violently suppressed, the report states that there have been no recent politically-motivated disappearances and that many political prisoners were released in 2013. Although the report does provide some support for Diallo's contention that Guinean security forces are not fully under the RPG government's control, it provides no support at all for his assertions that the police and army are still targeting RPG members. Rather, the specific instances of politically motivated violence the report cites appear to be against those who oppose the RPG. For example, the political prisoners it names include individuals who were being detained in connection with a 2011 attempt to assassinate President Condé.

A fundamental change in circumstances can exist where there has been "a change in the government that persecuted the petitioner." *Imelda*, 611 F.3d at 729; *see, e.g.*, *Gitimu v. Holder*, 581 F.3d 769, 774 (8th Cir. 2009) (petitioner's party leader elected president; no political killings or prisoners); *Uruci v. Holder*, 558 F.3d 14, 19 (1st Cir. 2009) (petitioner's party controlled parliament). This record supports that there has been such a change with the election of RPG leader Condé to the presidency. To be sure, the record contains ample evidence that Guinea is

6

still a troubled state, but "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi*, 386 F.3d at 1027. This record does not compel us to reverse the BIA's determination that conditions have changed in Guinea such that Diallo's fear of persecution is no longer well founded.

Substantial evidence also supports the BIA's rejection of Diallo's new basis for relief. Diallo argued on remand that he has a well-founded fear of future persecution based on a combination of ethnicity and political opinion. He asserts that because most members of his Fula tribe support a political party other than the RPG, he is likely to face political persecution at the hands of his fellow Fula. The BIA found that Diallo failed to establish an objectively reasonable fear of persecution on this basis, *see Al Najjar*, 257 F.3d at 1289, noting that the 2014 Human Rights Report is silent as to intra-ethnic violence. Given that the sole evidence Diallo offered on this point was his own testimony of seeing reports of persecution on Facebook, we cannot say that the record compels reversal of the BIA's finding on this issue. And because Diallo has not established his eligibility for asylum, he has also failed to establish eligibility for withholding of removal. *See Rodriguez Morales*, 488 F.3d at 891.

Finally, Diallo argues that he was "denied a full and fair hearing" when the IJ conducted proceedings beyond the limited scope of our remand. To establish

7

that there has been a violation of due process, Diallo must demonstrate "substantial prejudice" from the asserted error. *Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1333 (11th Cir. 2003). He has not done so, nor can he, because we do not review the IJ where the BIA has not expressly adopted its decision. *Al Najjar*, 257 F.3d at 1284. "Any error committed by the IJ thus 'may be "rendered harmless" by the BIA's application of the correct legal standard.'" *Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir. 1998) (quoting *Shirazi-Parsa v. INS*, 14 F.3d 1424, 1427 (9th Cir. 1994)). The BIA appropriately limited its findings to the issue we specified on remand: whether the government had rebutted the presumption of future persecution. To the extent that the IJ may have erred by making additional findings, any error did not violate Diallo's due process rights because he suffered no prejudice when the BIA undertook its own, appropriate review.

Diallo's petition for review is **DENIED.**

8