[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-13710

Non-Argument Calendar

_____

ELIAS ALVES-DOS SANTOS SIQUEIRA,
MARIA C. RIBEIRO-ALVES,
LIGIA RIBEIRO-CHAVES,

Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A220-280-405

_____

Before JORDAN, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Elias Alves-Dos Santos Siqueira and his wife and daughter seek review of the Board of Immigration Appeals' final order affirming the immigration judge's denial of his application for asylum and withholding of removal.[1]

Mr. Siqueira argues that the BIA erred in concluding that his proposed particular social group ("PSG")—Brazilian victims of theft who fear retribution for reporting the crime to police—is not cognizable under the Immigration and Nationality Act. We affirm the BIA's determination that his PSG is not cognizable.

## I

Mr. Siqueira and his wife and daughter, all natives and citizens of Brazil, entered the United States without inspection in May of 2021. The Department of Homeland Security served them with notices to appear charging them with removability under 8 U.S.C. § 1182(a)(6)(A)(i), as noncitizens present in the United States without being admitted or paroled. Mr. Siqueira conceded removability as charged and filed an application for asylum, statutory withholding of removal, and relief under the Convention Against Torture.

Mr. Siqueira's application for asylum and withholding of removal was based on his claim of membership in a PSG, which he

---

[1] Mr. Siqueira's wife and daughter are derivative beneficiaries of his asylum application.

defined as "one who has been a victim of theft and reports [the] incident to authorities and is subsequently threatened by the same or fears [the] perpetrator." AR at 176. Mr. Siqueira alleged that in 2015 or 2016, while living in Brazil, he was robbed. He reported the robbery to police and identified the perpetrator. The perpetrator, who carried a gun with him, began to "verbally threaten" Mr. Siqueira on a number of occasions, vowing that either Mr. Siqueira or someone in his family "will pay, one way." *Id.* at 138–41, 164. Mr. Siqueira encountered the perpetrator 10-15 times over the years but was never physically harmed by him. Mr. Siqueira reported the threats to the police. The police advised him to move neighborhoods, which he did. He later left Brazil with his wife and daughter out of fear that the perpetrator would harm or kill him or his family.

The IJ issued an oral decision denying the asylum application, finding that Mr. Siqueira testified credibly but failed to meet the eligibility requirements for asylum, withholding of removal, or CAT relief. As relevant to this petition, the IJ concluded that Mr. Siqueira's proposed PSG was not cognizable because he did not provide any evidence that the group was viewed as distinct in Brazilian society and because the PSG was "impermissibly circular," as it was "at least partially defined by the harm itself." *Id.* at 59.

The BIA later dismissed Mr. Siqueira's administrative appeal, affirming the IJ's determination that the proposed PSG was not cognizable because it lacked social distinction and was defined by the harm he feared. Because the BIA determined that Mr. Siqueira

4                    Opinion of the Court                    23-13710

was ineligible for asylum and withholding of removal on this basis, it did not address the IJ's other reasons for denying those forms of relief.[2]

Mr. Siqueira contends that the BIA erred in concluding that his PSG is not cognizable under the INA.

## II

We review only the decision of the BIA, except to the extent that the BIA expressly adopts or explicitly agrees with the IJ's decision. *See Jathursan v. U.S. Att'y Gen.*, 17 F.4th 1365, 1372 (11th Cir. 2021). We do not consider issues the BIA did not reach. *See id.*

We review legal conclusions, including the cognizability of a PSG, *de novo*. *See Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). However, until recently, our review of the cognizability of a PSG was "informed by the principles of deference set forth in *Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837 (1984)." *Id.* When the Supreme Court overruled *Chevron* earlier this year, it explained that it did "not call into question prior cases that relied on the *Chevron* framework." *Loper Bright Enters., Inc. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). Those holdings are "still subject to statutory *stare decisis* despite [the Court's] change in interpretive methodology." *Id.* Because the parties have not asked

---

[2] The BIA also noted that by not raising the issue on appeal, Mr. Siqueira had waived any future challenges to the IJ's denial of his CAT claim and to the IJ's finding that he could safely and reasonably relocate within Brazil.

us to disturb prior BIA and 11th Circuit interpretations of the term PSG, we decline to do so here.

Non-citizens may be granted asylum if they qualify as refugees under the INA.  *See* 8 U.S.C. § 1158(b)(1)(A).  The INA defines a "refugee" as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]

8 U.S.C. § 1101(a)(42)(A).  The asylum applicant carries the burden of proving statutory "refugee" status.  *See* 8 U.S.C. § 1158(b)(1)(B)(i); *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010).

To establish eligibility for asylum, an applicant "must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a well-founded fear that the statutorily listed factor will cause such future persecution." *Diallo*, 596 F.3d at 1332 (internal quotation marks omitted).  To qualify for withholding of removal, an applicant must establish that his "life or freedom would be threatened in [his] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).

Here, the only issue Mr. Siqueira raised that is properly before us is the BIA's determination that his PSG is not cognizable. The BIA did not err in its determination. A particular social group must exist "independent of the fact that its members are persecuted." *Alvarado v. U.S. Att'y Gen.*, 984 F.3d 982, 991 (11th Cir. 2020). Mr. Siqueira provided no evidence that members of his proposed group—Brazilian victims of theft who fear retribution for reporting the crime to police—share characteristics other than the risk of persecution. Nor did Mr. Siqueira provide evidence that the proposed group is distinct or visible within Brazilian society. *See Amezcua-Preciado v. U.S. Att'y Gen.*, 943 F.3d 1337, 1342–43 (11th Cir. 2019).

### III

Mr. Siqueira's petition is denied.

**PETITION DENIED.**