[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10196
Non-Argument Calendar
_____

Agency No. A201-254-591


SVETLANA GRIGORE SUMSCHI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 26, 2017)

Before TJOFLAT, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Svetlana Grigore Sumschi, a citizen of Moldova, seeks review of the final order of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). Sumschi contends that she was politically persecuted in Moldova when she was assaulted and threatened because of her opposition to the Communist Party. She also argues that she has a well-founded fear of future political persecution if she is removed to Moldova.

We review the BIA's decision as the final judgment in an immigration appeal. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). When the BIA explicitly agrees with the IJ's findings, we review both the BIA and the IJ as to those findings. *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). The BIA explicitly agreed with certain findings by the IJ in this case, so we review those IJ findings in addition to the BIA's decision. *See id.*

We review our subject matter jurisdiction *de novo*. *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015). Under the Immigration and Nationality Act ("INA"), we lack jurisdiction to review a final order in an immigration case unless "the alien has exhausted all administrative remedies available to the alien as of right." INA § 242(d)(1), 8 U.S.C. § 1252(d)(1). An alien who failed to argue "the core issue now on appeal before the BIA" did not

2

exhaust administrative remedies with respect to that issue. *Indrawati*, 779 F.3d at 1297 (quotation omitted). Issues that are not raised in an appellate brief are abandoned. *Ruga v. U.S. Att'y Gen.*, 757 F.3d 1193, 1196 (11th Cir. 2014).

Factual findings are reviewed under the highly deferential substantial evidence test. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc). "We must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1027 (quotations omitted). We view the record evidence in the light most favorable to the BIA's decision and draw all reasonable inferences in favor of that decision. *Id.* We reverse a factual finding "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal." *Id.*

An applicant for asylum must meet the INA's definition of "refugee." INA § 208(b)(1)(A), 8 U.S.C. § 1158(b)(1)(A). A "refugee" is

> any person who is outside any country of such person's nationality . . .
> and who is unable or unwilling to return to, and is unable or unwilling
> to avail himself or herself of the protection of, that country because of
> persecution or a well-founded fear of persecution on account of race,
> religion, nationality, membership in a particular social group, or
> political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The alien must prove persecution or a well-founded fear of persecution with specific and credible evidence. *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010).

3

"[P]ersecution is an extreme concept requiring more than a few isolated incidents of verbal harassment or intimidation[, and] mere harassment is not persecution." *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013) (quotation omitted). Determining whether an alien was persecuted involves considering the cumulative effect of the allegedly persecutory incidents. *Diallo*, 596 F.3d at 1333. We "have not required serious physical injury [to prove persecution] where the [alien] demonstrates repeated threats combined with other forms of severe mistreatment." *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1009–10 (11th Cir. 2008). For example, we previously concluded that the record compelled a finding that an alien was persecuted when she received repeated death threats over the course of two years and was dragged from her vehicle by her hair, was traumatized by the torture and murder of a family groundskeeper who refused to reveal her whereabouts, and was kidnapped and beaten. *Id*. at 1009–10. We concluded that substantial evidence supported a finding that an alien was not persecuted when he was arrested while participating in a demonstration, interrogated and beaten for five hours, and detained for four days. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1353 (11th Cir. 2009); *see also Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1171, 1174 (11th Cir. 2008) (concluding that the record did not compel a finding of persecution when an alien was threatened, detained for 36 hours, and beaten).

4

"A credible death threat by a person who has the immediate ability to act on it constitutes persecution regardless of whether the threat is successfully carried out." *Diallo*, 596 F.3d at 1333–34 (concluding that an alien was persecuted by the soldiers who killed his brother when the alien was beaten, detained for eleven hours, and threatened with death before he escaped).  Attempted murder constitutes persecution even if the alien is not physically injured.  *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1233-34 (11th Cir. 2007) (concluding that an alien was persecuted when a revolutionary group attempted to murder him by shooting at his moving car).

An alien proves a well-founded fear of persecution by establishing "a reasonable possibility he or she would be singled out individually for persecution, or that he is a member of, or is identified with, a group that is subjected to a pattern or practice of persecution." *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1174 (11th Cir. 2008) (quotation omitted).  The "alien must establish that the government would be her persecutor or that the government would be unwilling or unable to protect her from persecution by a private actor." *Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1291 (11th Cir. 2014).  The alien's fear of persecution must be both subjectively genuine and objectively reasonable.  *De Santamaria*, 525 F.3d at 1007.  The "subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution." *Id*. at 1007 (quotations

5

omitted). An alien who shows past persecution is presumed to have a well-founded fear of persecution. *Shi v. U.S. Att'y Gen.*, 707 F.3d 1231, 1235 (11th Cir. 2013).

An alien may not be removed to a country if the alien's life or freedom would be threatened in that country on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). An alien seeking withholding of removal "must show that it is more likely than not that he will be persecuted on account of a protected ground if he returned to his home country." *Gonzalez*, 820 F.3d at 403. An alien unable to meet the well-founded fear standard for asylum generally fails to meet this more stringent standard for withholding of removal. *Sanchez Jimenez*, 492 F.3d at 1239.

An alien is eligible for CAT relief if the alien establishes it is more likely than not that she would be tortured if removed to the proposed country of removal. 8 C.F.R. § 208.16(c)(2). "Torture" is

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent of acquiescence of a public official or other person acting in an official capacity.

6

8 C.F.R. § 208.18(a)(1).

Upon review of the record and consideration of the parties' briefs, we deny the petition. As an initial matter, Sumschi adequately exhausted her arguments regarding a well-founded fear of future persecution. She raised the core issue of future persecution to the BIA by arguing that evidence of human rights problems, government corruption, and Community Party activity demonstrates she will be persecuted if removed to Moldova. *See Indrawati*, 779 F.3d at 1297. Thus, she adequately exhausted the arguments regarding a well-founded fear of future persecution that she raises to this Court. *See Indrawati*, 779 F.3d at 1297 (stating that exhaustion "is not a stringent requirement" and simply requires an alien to have "argued the core issue now on appeal before the BIA" (quotation omitted)). As to waiver, Sumschi does not abandon her arguments regarding a well-founded fear of future persecution. She essentially challenges the BIA's entire well-founded fear finding by arguing that the evidence shows she has an objective, reasonable fear of being persecuted and that there is corruption, abuse, and Communist infiltration in the Moldovan government. Thus, we reach the merits of her future persecution argument.

Substantial evidence supports the IJ and BIA's denial of asylum. First, the record does not compel reversal of the IJ and the BIA's determination that Sumschi's assaults and threats considered cumulatively do not rise to the level of

persecution.  Sumschi was trampled during an anti-Communist demonstration when the police began to disburse the demonstrators.  However, her testimony reflects that she was not specifically targeted, but was injured because the situation became chaotic.  Two women confronted her in an elevator after distributing political flyers.  One of the women held a knife to her throat and threatened to kill her and her family if she continued to oppose the Communist Party.  However, her testimony indicates that the women released her from the elevator and did not intend or attempt to kill her.  She and her family received threatening telephone calls from the women after the incident in the elevator, but she remained in Moldova for nearly a year following the incident and was never again directly confronted.  Sumschi did not face attempted murder or the type of severe mistreatment that we have recognized as persecution.  *See, e.g.*, *De Santamaria*, 525 F.3d at 1009–10; *Sanchez Jimenez*, 492 F.3d at 1233.  In fact, we previously held that worse treatment than that suffered by Sumschi did not constitute persecution.  *See, e.g., Kazemzadeh*, 577 F.3d at 1353; *Djonda*, 514 F.3d at 1171, 1174.  Substantial evidence supports the IJ and BIA's determination that Sumschi's treatment in Moldova did not reach an extreme level that constitutes persecution.  *See Rodriguez*, 735 F.3d at 1308 (referring to persecution as "an extreme concept" requiring more than mere harassment or intimidation (quotation omitted)).

8

Second, the record does not compel reversal of the BIA's decision that Sumschi has not shown an objective, well-founded fear of persecution if removed to Moldova.  The evidence reflects that the Communist Party lost the majority in the Moldovan parliament before Sumschi left the country and that a coalition of opposition parties controls the parliament and elected a president.  Although government corruption and torture of detained people by the police continue to be problems in Moldova, the government increased sentences for torture and replaced officials in charge of police forces.  Individuals can criticize the government without reprisal and have the right to change their government peacefully through elections.  Sumschi did not present evidence showing that Communists continue to target political opponents, and she and her family have not been threatened since November 2010.  Consequently, there is substantial evidence in the record to support the BIA's determination that Sumschi did not demonstrate an objective, well-founded fear of future persecution in Moldova.

Because Sumschi has not established asylum eligibility, substantial evidence also supports the BIA's decision that she has not met the higher burden to show eligibility for withholding of removal.  *See Sanchez Jimenez*, 492 F.3d at 1238-39.  Additionally, based on the above analysis, substantial evidence supports the IJ and the BIA's determination that she has not established eligibility for CAT relief by

showing that it is more likely than not she will be tortured if removed to Moldova.

*See* 8 C.F.R. § 208.16(c)(2).

**PETITION DENIED.**