[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13847
Non-Argument Calendar

_____

Agency No. A029-140-203

BYRON RODOLFO RECINOS-CORONADO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 19, 2019)

Before WILSON, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Byron Rodolfo Recinos-Coronado seeks review of the Board of Immigration Appeals' (BIA) final order affirming the Immigration Judge's (IJ) denial of his application for asylum and withholding of removal. Recinos-Coronado argues that he is eligible for asylum because he suffered past persecution and has a well-founded fear of future persecution due to his membership in a particular social group—here, the lesbian, gay, bisexual, and transgender (LGBT) community. He also argues that he established his eligibility for withholding of removal because he demonstrated that his life or freedom would be threatened due to his membership in the LGBT community. Because the BIA and IJ's conclusions were supported by substantial evidence, Recinos-Coronado's petition is denied.

## I.    Factual and Procedural Background

Recinos-Coronado, a native and citizen of Guatemala, entered the United States without inspection for the first time in 1986. He was first removed to Guatemala in May 2013, but he returned to the United States later that year and was removed another two times. In 2014, the Department of Homeland Security charged Recinos-Coronado under the Immigration and Nationality Act (INA) as an alien present in the United States without admission and as an alien who had previously been ordered removed. INA §§ 212(a)(6)(A)(i), (a)(9)(C)(i)(II) (codified at 8 U.S.C. §§ 1182(a)(6)(A)(i), (a)(9)(C)(i)(II)). Recinos-Coronado,

2

proceeding pro se, admitted the allegations in his notice to appear and the IJ found him removable.

Recinos-Coronado then filed an application for asylum and withholding of removal based on membership in a particular social group, and for Convention Against Torture (CAT) protection.  To support his application, Recinos-Coronado included a declaration, an affidavit from an expert in Latin American Studies, numerous human rights reports and country reports on the treatment of LGBT individuals in Guatemala, news reports of attacks on LGBT individuals, police and medical reports from a July 2013 beating he endured in Guatemala, and letters of support from friends living in the United States.

In his declaration, Recinos-Coronado testified to the following.  He knew he was gay "from a very young age," and he had to hide his sexuality "in fear of being rejected, beaten, or killed."  He experienced "acts of violence and hatred" from his classmates as a child and by random individuals on the streets.  In particular, when he was in primary school, he was "teased, ridiculed, and often told [that he] seemed like a girl."  When he was nine years old, he was in a fistfight with two boys who called him "fucking faggot, fag, and little girl" in Spanish.  That year, his uncle came to visit and he "would often grab [his] butt and try to touch [him] inappropriately," until one day his uncle took him into the countryside alone and forced him to perform oral sex until he threw up.  He did not tell the police or his

3

family "because [his uncle] threatened to hurt [him] if [he] did." When he was eleven years old, he visited his father, a rancher, in Belize, who told him that he "looked like a little gay boy on a horse," and reminded him that he was a boy, not a girl. His father told him that "if he ever had a gay son, he would prefer to have him dead than in the family." At fourteen years old, he left school because he was "embarrassed and knew that [he had] to leave."

In his application, Recinos-Coronado also described an attack that he experienced in July 2013 in Guatemala. He stated that he was beaten by three individuals for being gay because "gays were not welcome and [he] was a menace to society, plus a sinner." He stated that the individuals who beat him threatened to kill him if he did not leave, he feared being tortured and killed should he return, and there existed general hatred for the LGBT community in Guatemala.

In November 2015, the IJ denied Recinos-Coronado's application for asylum, withholding of removal, and CAT protection. The IJ determined that Recinos-Coronado failed to establish that he suffered past persecution because (1) the sexual assault Recinos-Coronado suffered at the hands of his uncle was not motivated by Recinos-Coronado's membership in the LGBT community; (2) the verbal abuse Recinos-Coronado endured as a child was not motivated by his membership in the LGBT community; (3) the harm suffered as a result of the 2013 beating did not rise to the level of persecution; and (4) Recinos-Coronado failed to

4

establish that the Guatemalan government was unwilling or unable to control the men who attacked him, given the ongoing investigation.  The IJ likewise determined that Recinos-Coronado failed to show a well-founded fear of future persecution because (1) there was no evidence that the three 2013 attackers were trying to find him; (2) Recinos-Coronado remained unharmed in Guatemala for four months after the attack; and (3) Recinos-Coronado failed to establish that the Guatemalan government was unwilling or unable to control the men who attacked him, given the ongoing investigation.  Finally, the IJ determined that Recinos-Coronado was not eligible for CAT protection.

On appeal, the BIA agreed with the IJ that Recinos-Coronado failed to establish past persecution or a well-founded fear of future persecution.  In relevant part, the BIA found that Recinos-Coronado's failure to report the sexual abuse to other family members or the authorities was "fatal" to his asylum claim.  The BIA therefore did not consider the sexual abuse when it conducted the past persecution analysis.[1]

On appeal, we granted in part and denied in part the petition for review. *Recinos-Coronado v. U.S. Att'y Gen.*, 698 F. App'x 578 (11th Cir. 2017) (per

---

[1] The BIA also determined that it was clear error for the IJ to conclude that the name-calling Recinos-Coronado endured as a child was not on account of a protected ground.  But because this mistreatment did not rise to the level of persecution—even when considered cumulatively with the other evidence—the BIA found the error to be harmless.

5

curiam).  We granted the petition with regards to Recinos-Coronado's application for asylum and withholding of removal and denied the petition with regards to his application for CAT protection.  *See id.*  We concluded, as a matter of law, that the BIA's decision to exclude from the past persecution analysis the sexual abuse Recinos-Coronado suffered—a decision that was based on the fact that Recinos-Coronado failed to report the abuse—was error.  *Id.* at 579–80.

On remand, the BIA again denied Recinos-Coronado's application.  The BIA agreed with the IJ's conclusion that the harm Recinos-Coronado suffered at the hands of his uncle did not constitute persecution on account of a statutorily enumerated ground because Recinos-Coronado failed to establish that his homosexuality was a motivating factor leading to the abuse.  Recinos-Coronado filed the instant appeal.

## II.    Standard of Review

We review the BIA's decision as the final judgment.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).  But where the BIA expressly adopted the IJ's decision or agreed with the IJ's reasoning, we review the decisions of both the BIA and the IJ to the extent of the agreement.  *Id.*  We review the BIA's factual determinations under the highly deferential substantial-evidence test and "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Najjar v. Ashcroft*,

257 F.3d 1262, 1283–84 (11th Cir. 2001) (quotation omitted).  "We view the record evidence in the light most favorable to the [BIA's] decision and draw all reasonable inferences in favor of that decision."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).  We will reverse a finding of fact by the BIA "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  *Id.* (citation omitted).

## III.    Discussion

To prove eligibility for asylum, an applicant must establish (1) past persecution on account of a statutorily protected ground or a "well-founded fear" that the applicant will be persecuted on account of a protected ground; and (2) that the applicant's home country would be unable or unwilling to protect him.  INA § l01(a)(42)(A) (codified at 8 U.S.C. § 1101(a)(42)(A)); *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010) (per curiam); *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007); 8 C.F.R. § 1208.13(a), (b).  To demonstrate eligibility for asylum based on past persecution, the applicant must present substantial evidence that a past incident or incidents (1) rose to the level of persecution, and (2) were on account of one of the statutorily protected grounds. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948–49 (11th Cir. 2010).

Persecution is an "extreme concept" that requires more than isolated incidents of verbal harassment or intimidation. *See, e.g.*, *Kazemzadeh*, 577 F.3d at 1353; *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1171–74 (11th Cir. 2008) (holding that the record did not compel a finding that the petitioner suffered past persecution where the petitioner was detained for thirty-six hours in a small cell shared by twelve people and was beaten twice, once involving a belt and resulting in scratches and bruises); *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 859–61 (11th Cir. 2007) (per curiam) (concluding that the record compelled reversal of the BIA's determination that the petitioner did not suffer past persecution based on the cumulative effects of (1) an attack where two men made death threats against the petitioner while pulling the trigger to an unloaded gun, making the petitioner believe the men were going to kill him; (2) an attack that included a severe beating that left the petitioner "almost unconscious"; (3) continued phone threats; and (4) two occasions where the petitioner's car was vandalized). In determining whether the petitioner has suffered persecution, we evaluate the cumulative harm suffered by the petitioner because "even if each fact considered alone would not compel a finding of persecution, the facts taken as a whole may do so." *Shi v. U.S. Att'y Gen.*, 707 F.3d 1231, 1235 (11th Cir. 2013).

Even where an applicant fails to show past persecution, a well-founded fear of future persecution may be established by showing a reasonable possibility of

8

being singled out for persecution that cannot be avoided by relocating within the subject country.  8 C.F.R. §§ 208.13(b)(1)–(3)(i); *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006) (per curiam) ("The applicant must present 'specific, detailed facts showing a good reason to fear that he will be singled out for persecution on account of [a statutorily protected ground].'" (quotation omitted)); *Kazemzadeh*, 577 F.3d at 1352.  The applicant does not need to show that he will be singled out for persecution, however, if he establishes that his home country has a "pattern or practice . . . of persecution of a group of persons similarly situated to the applicant" and a reasonable fear of persecution on account of a protected ground based on his inclusion in that group.  8 C.F.R. § 208.13(b)(2)(iii).

The applicant must demonstrate that one of the enumerated grounds "was or will be at least one central reason for persecuting" him.  INA § 208(b)(1)(B)(i) (codified at 8 U.S.C. § 1158(b)(1)(B)(i)).  We have recognized homosexuality as a particular social group.  *Ayala*, 605 F.3d at 949.  Where the feared harm would be committed by private actors, the applicant also must show that the harm he fears would be committed by forces that the government is unable or unwilling to control.  *Lopez*, 504 F.3d at 1345.  A petitioner can meet this standard by showing that he is "unable to avail himself of the protection of his home country."  *Ayala*, 605 F.3d at 950 (alterations and quotation omitted).

9

An applicant is entitled to withholding of removal when his life or freedom would be threatened in the country of removal because of his membership in a particular social group.  INA § 241(b)(3)(A) (codified at 8 U.S.C. § 1231(b)(3)(A)).  To qualify for withholding of removal, an applicant must show a clear probability of persecution, meaning that he more likely than not would be persecuted upon returning to the country because of a protected characteristic.  *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 819 (11th Cir. 2004).  An applicant can qualify even without past persecution "if he can demonstrate a future threat to his life or freedom on a protected ground in his country."  *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437 (11th Cir. 2004) (per curiam) (quotation omitted).  When an applicant fails to "establish a claim of asylum on the merits, he necessarily fails to establish eligibility for withholding of removal or protection under CAT."  *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1285 n.4 (11th Cir. 2005) (citation omitted).

On appeal, Recinos-Coronado argues that the record compels finding that he suffered past persecution and has a well-founded fear of future persecution due to his sexual orientation.  Regarding past persecution, Recinos-Coronado argues that the IJ and BIA erred by concluding that (1) he failed to prove that his homosexuality was a motivating factor leading to the sexual abuse he suffered and (2) the harm he suffered as a result of the verbal abuse from both his peers and father as a child, in addition to the 2013 beating, did not amount to persecution.

10

Recinos-Coronado also argues that the BIA wrongly concluded that he failed to establish a well-founded fear of future persecution. According to Recinos-Coronado, the BIA ignored the record evidence of the widespread persecution of homosexuals in Guatemala and failed to give proper weight to the evidence demonstrating that Guatemalan government entities often fail to protect homosexuals from harm.

Substantial evidence supports the BIA's finding that Recinos-Coronado failed to establish eligibility for asylum based on either past persecution or a well-founded fear of future persecution. First, the record does not compel a finding that the BIA erred when it found that the sexual abuse Recinos-Coronado suffered was not motivated by his homosexuality. The only evidence Recinos-Coronado provided to suggest his uncle's intent was his own testimony, in which he agreed that his youth and inability to protect himself was one of "many things" he believed motived his uncle, and repeated that he was singled-out "because of the way that [he] was." Although Recinos-Coronado's testimony might support a contrary conclusion to the BIA's finding, this testimony, without more, is not sufficient to compel a reversal. *Adefemi*, 386 F.3d at 1027. Moreover, the verbal harassment Recinos-Coronado suffered as a child, coupled with a single beating that took place many years later—where he did not suffer any lingering or permanent injuries—does not constitute past persecution because it does not raise

11

to the level of sufficiently "extreme" conduct this Court requires. *See, e.g.*, *Kazemzadeh*, 577 F.3d at 1353; *Djonda*, 514 F.3d at 1171, 1174; *Delgado*, 487 F.3d at 859, 861.

Second, the record does not compel a finding of a well-founded fear of persecution because there is no indication in the record that the men who attacked him in July 2013 either know who he is or are still looking for him, or that any other person or group is looking for Recinos-Coronado and would seek him out upon his removal to Guatemala. Furthermore, Recinos-Coronado failed to establish that the Guatemalan government would be unable or unwilling to protect him from persecution. *Ayala*, 605 F.3d at 950. Rather, the record reflects that the Guatemalan police have conducted a competent, albeit unsuccessful, investigation of the July 13 attack: the officers promptly arrived at the scene of the attack, reported the incident, and continue to search for the culprits. Given these efforts, it cannot be said that the Guatemalan government would be unable or unwilling to protect Recinos-Coronado in the future.[2]

---

[2] In his appellate brief, Recinos-Coronado notes that he can establish a well-founded fear of future persecution by proving either (1) a reasonable possibility of persecution upon return, or (2) that there is a "pattern or practice" of persecution against a group to which he belongs. For the rest of the section, Recinos-Coronado attempts to establish a reasonable possibility of persecution. Recinos-Coronado did not specifically state the standards required to prove a pattern or practice of persecution, nor directly tie his facts to a pattern or practice analysis. Because Recinos-Coronado did not raise the argument "plainly and prominently . . . for instance by devoting a discrete section of his argument to those claims," *Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 530 (11th Cir. 2013) (internal quotation marks and quotation omitted), we consider it waived.

Finally, because Recinos-Coronado failed to "establish a claim of asylum on the merits, he necessarily fails to establish eligibility for withholding of removal or protection under CAT." *Forgue*, 401 F.3d at 1285 n.4.  Accordingly, we deny Recinos-Coronado's petition.

**PETITION DENIED.**