[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13791
Non-Argument Calendar
_____

Agency No. A208-455-464

MARITZA CONCEPCION CALIX-GONZALEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 7, 2019)

Before MARTIN, JILL PRYOR and FAY, Circuit Judges.

PER CURIAM:

Maritza Calix-Gonzalez, a Honduran citizen, petitions for review of a final

order of the Board of Immigration Appeals ("BIA") affirming the Immigration

Judge's ("IJ") denial of her application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). Calix-Gonzalez applied for asylum, withholding of removal, and CAT relief based on two incidents of gang members threatening her and her minor son Hector, who was a derivative applicant. The BIA denied the asylum and withholding of removal claims because it determined that Calix-Gonzalez had shown neither past persecution nor a well-founded fear of future persecution based on membership in a particular social group. It determined that the gang's conduct did not rise to the level of persecution and was unrelated to Calix-Gonzalez's and Hector's membership in a protected social group. The BIA denied the request for CAT relief because it determined that Calix-Gonzalez presented no evidence showing that a return to Honduras would, more likely than not, subject them to torture with the consent or acquiescence of the government.

On appeal, Calix-Gonzalez argues that the BIA's decision was erroneous because based on the gang's threats she and Hector suffered past persecution and had a well-founded fear of future persecution connected to their membership in a cognizable particular social group. We disagree. After careful review, we deny the petition.

2

## I.     BACKGROUND

Calix-Gonzalez and Hector entered the United States in September 2015. One day after they entered the country, the Department of Homeland Security issued them notices to appear to show why they should not be removed.  They conceded that they were removable, but Calix-Gonzalez filed an application for asylum, withholding of removal, and CAT relief for herself and Hector based on past persecution they had allegedly suffered because of their membership in a particular social group.

At a merits hearing, Calix-Gonzalez and Hector were represented by counsel who argued that the "particular social group" of which they were members consisted of "[y]oung Honduran families subject to threats [by] gangs."  A.R. at 67.[1]  In support of the application, Calix-Gonzalez presented testimony given by her and Hector, a U.S. Department of State Country Report on Honduras, and a State Department Travel Warning on the country.

Calix-Gonzalez and Hector testified that they left the Honduran city of Juticalpa because two encounters with a gang at Hector's school showed that the gang wanted to kill him.  After the first encounter, Hector called Calix-Gonzalez and asked her to pick him up from school because gang members with blades and

---

[1] Citations to "A.R." refer to the administrative record.

3

knives were threatening to kill him if he did not join the gang. She called the police and brought Hector home. The gang members left when the police arrived, but according to Calix-Gonzalez, the police "didn't do anything." *Id.* at 75-76. After this incident, Hector did not want to go to school again, and Calix-Gonzalez kept him home. During the second encounter, about five gang members armed with blades and knives traveled to Calix-Gonzalez's home where they threatened to kill her and Hector. She called the police, but by the time they arrived, the gang members had fled. The police made no arrests in either incident with the gang.

Calix-Gonzalez also testified that, according to her neighbor, Leticia Salinas, gang members continued their efforts to find and kill Calix-Gonzalez after she left Honduras. Calix-Gonzalez believed that if she were to return, the gang would kill her and Hector, even if they moved to a different city. She conceded, however, that no one knew her or Hector in Tegucigalpa, another Honduran city. She also conceded that she could not name the gang to which the members belonged. Hector similarly could not name the gang.

The IJ denied Calix-Gonzalez's application for asylum, withholding of removal, and CAT relief. He found that her testimony was credible but determined that the isolated gang-related incidents did not amount to persecution based on membership in a particular social group. Specifically, he determined that the gang's conduct did not amount to persecution, the gang had not targeted Calix-

4

Gonzalez and Hector because of their membership in a particular social group, and the Honduran police had assisted them by responding to both incidents. He determined that Calix-Gonzalez lacked a well-founded fear of future persecution because she made no attempt to avoid any future persecution by relocating elsewhere in Honduras before immigrating to the United States even though it was reasonable for her to do so. He determined that she was entitled to no CAT relief because he found that no record evidence showed that the government had ever held her or Hector in custody or intended to acquiesce to their torture.

Calix-Gonzalez appealed the IJ's decision to the BIA. The BIA first affirmed the IJ's denial of asylum. It determined that the gang's actions did not rise to the level of persecution because the threats were unaccompanied by physical violence and it was unclear whether the gang members were prepared to carry out their threats. As Calix-Gonzalez had not shown that these threats amounted to past persecution, the BIA stated that she was entitled to no presumption of a well-founded fear of future persecution. The BIA also agreed with the IJ's determination that the gang's threats bore no relation to Calix-Gonzalez's or Hector's membership in a particular social group. Instead, it determined that the gang's threats were personal in nature—resulting from her perceived interference with gang recruitment. Additionally, the BIA affirmed the IJ's denial of asylum on the alternate ground that Calix-Gonzalez had shown

5

neither that (1) the Honduran authorities were unable or unwilling to assist, nor that (2) relocation within Honduras would be unsafe.  Based on its determination that Calix-Gonzalez was ineligible for asylum, the BIA determined that she failed to satisfy the higher burden of proof applicable to her withholding of removal claim.

The BIA also affirmed the IJ's denial of CAT relief.  The BIA determined that Calix-Gonzalez's speculation that she and Hector would be tortured upon their return to Honduras, and that its corrupt government would ignore such torture, was insufficient to show that they would, more likely than not, be tortured by or with the acquiescence of a public official.

This is Calix-Gonzalez's petition for review.

## II.    STANDARDS OF REVIEW

We review the BIA's legal determinations *de novo*.  *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1195 (11th Cir. 2006).  We review the BIA's factual findings under the substantial evidence test, which requires us to view the record in the light most favorable to the BIA's decision and draw all reasonable inferences in its favor.  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc).  We will affirm the BIA's decision if, considering the record as a whole, it is supported by reasonable, substantial, and probative evidence.  *Id.* at 1027.

## III.   DISCUSSION

Calix-Gonzalez argues that the BIA erred in determining that she and Hector were ineligible for asylum and withholding of removal.[2]  According to Calix-Gonzalez, the record compels the conclusion that she and Hector suffered past persecution at the hands of the gangs based on their membership in the particular social group consisting of impoverished youths, without a father or protective authority, who publicly refuse to join gangs.  She also argues that the gang imputed a political opinion on Hector based on his refusal to join.  She further argues that she and Hector face an objectively reasonable risk of future persecution upon their return to Honduras because of that country's widespread gang problem.

The government responds that the two incidents of intimidation by the gang members did not rise to the level of persecution.  According to the government, the gang's threats were based on a personal reason, Hector's refusal to join, not membership in a protected group.  The government further argues that the Honduran government was willing to protect Calix-Gonzalez and her family because the police showed up when she reported the gang's threats, and she testified that the police had always been there to provide help.  The government

---

[2] Calix-Gonzalez raises no argument that the BIA erred by denying her CAT relief.   We therefore dismiss her petition as to that claim.  *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

asserts that Calix-Gonzalez has shown no well-founded fear of future persecution because she has provided no evidence, apart from speculation, showing that she lacked the option of relocating within Honduras.

Our review of the record indicates that the BIA's ruling was supported by substantial evidence. As we first explain, we affirm the BIA's denial of Calix-Gonzalez's asylum claim because we cannot say based on the gang's threats that the record compels the conclusion that she either suffered past persecution or had a well-founded fear of future persecution. As we then explain, our conclusion that Calix-Gonzalez has failed to demonstrate asylum eligibility means that she has also failed to show eligibility for withholding of removal.

## A.    Substantial Evidence Supported the BIA's Determination that Calix-Gonzalez Was Ineligible For Asylum.

To qualify for asylum, an applicant must prove that she is a "refugee" as that term is defined in the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1158(b)(1)(A); *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1231 (11th Cir. 2007). The INA defines a refugee as:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A).  Thus, the applicant may prove that she is a refugee by presenting "specific and credible evidence" of either past persecution or a well-founded fear of future persecution based on a statutorily enumerated ground. *Sanchez Jimenez*, 492 F.3d at 1232.  "A showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution."  *Id.*  If the applicant cannot demonstrate past persecution, she must demonstrate that she has a well-founded fear of future persecution by showing that there is a reasonable possibility of her suffering persecution if she returned to her home country.  *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1256 (11th Cir. 2007).  The applicant's fear of future persecution is not well-founded if she could avoid it by relocating to another part of her home country.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1352 (11th Cir. 2009); 8 C.F.R. § 208.13(b)(2)(ii).

Although the INA does not define "persecution," we have stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution."  *Sanchez Jimenez*, 492 F.3d at 1232 (internal quotation marks omitted).  When deciding whether an applicant has suffered past persecution, the factfinder must consider the cumulative effect of the alleged incidents.  *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007).  Persecution may occur at the hands of the government or a private actor.  *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941,

9

950 (11th Cir. 2010).  If an applicant for asylum alleges persecution by a private actor, she must prove that her home country is unable or unwilling to protect her from that private actor.  *Id.*

The record is insufficient to compel the conclusion that Calix-Gonzalez and Hector suffered past persecution.  To show past persecution, Calix-Gonzalez relies on the two encounters with the gang where its members issued death threats.  "A credible death threat by a person who has the immediate ability to act on it constitutes persecution regardless of whether the threat is successfully carried out." *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1333-34 (11th Cir. 2010).  In *Diallo*, we held that the petitioner showed that he received a credible death threat from someone who had the immediate ability to act on it when he testified that in a fight between armed soldiers and his political opposition group, his brother was killed; he and his father were beaten; and the soldiers took him and the other members of his group to a separate location "where they were photographed, registered, detained, and warned that they would be executed the following day." *Id.* at 1331, 1333-34.  In contrast, we held in *Sepulveda v. U.S. Att'y General*, 401 F.3d 1226, 1231 (11th Cir. 2005), that the petitioner failed to show past persecution based on death threats when she testified that individuals identifying themselves as belonging to a guerilla group "called [her] by name, used profanity, directed her to

stop her [political] activities, . . . made death threats" towards her and her political group, and bombed the restaurant where she was employed. 401 F.3d at 1231.

Here, the record does not mandate the conclusion that the gang's death threats were sufficient to show past persecution. Unlike in *Diallo*, Hector suffered no physical harm at the hands of the gang; no evidence shows that the gang seriously harmed other people similarly situated to Hector; and no evidence shows that this particular gang ever attempted to harm anyone at all. Lacking these indications of credibility, we conclude that here the gang's threats were more like the threats issued in *Sepulveda* than those given in *Diallo*. Thus, we cannot say that the record required the BIA to determine that the threats rose to the level of persecution.

Nor does the record compel the conclusion that Calix-Gonzalez had a well-founded fear of future persecution. Because she failed to show past persecution, she bore the burden of showing a well-founded fear of future persecution that could not reasonably be avoided by relocating within Honduras. *Kazemzadeh*, 577 F.3d at 1352. She did not meet this burden because she submitted no evidence, apart from her unsubstantiated fear of the gang throughout the entire country, to show why the gang would threaten her safety in parts of Honduras other than Juticalpa. *See Mazariegos v. Office of U.S. Att'y Gen.*, 241 F.3d 1320, 1327-29 (11th Cir. 2001) (concluding that substantial evidence existed

11

to support a finding that a petitioner could safely relocate in his home country when he failed to show that his alleged persecutors operated throughout the entire country). Though she submitted with her application both a Country Report and a Travel Warning on Honduras issued by the Department of State, these documents cannot establish that she and Hector lacked the option of relocating in Honduras. Both she and Hector conceded in their testimony that they could not identify the gang that threatened Hector. We therefore have no means to determine whether the violence mentioned in the State Department documents has any connection to the gang that issued the death threats.

Thus, the BIA's ruling that Calix-Gonzalez showed neither past persecution nor a well-founded fear of future persecution was supported by substantial evidence.[3] We therefore deny the petition as to the asylum claim.

## B.    Calix-Gonzalez's Failure to Qualify For Asylum Precludes Withholding of Removal.

To qualify for withholding of removal under the INA, an applicant must show that her "life or freedom would be threatened in [her] country because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The applicant bears the burden of

---

[3] Because of our conclusion that Calix-Gonzalez showed neither past persecution nor a well-founded fear of future persecution, we do not decide whether substantial evidence supported the BIA's determinations that (1) any persecution she may have suffered bore no relation to a particular social group and (2) she failed to show that the Honduran government was unable or unwilling to protect her from the gang.

12

showing that it is "more likely than not" that upon returning to her home country she will be persecuted based on a protected ground. *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013) (internal quotation marks omitted). As with asylum claims, the applicant may satisfy her burden of showing eligibility for withholding of removal "by showing either: (1) past persecution in h[er] country based on a protected ground, in which case a rebuttable presumption is created that h[er] life or freedom would be threatened if [s]he returned to h[er] country; or (2) a future threat to h[er] life or freedom on a protected ground in h[er] country." *Delgado*, 487 F.3d at 861 (internal quotation marks omitted).

The burden of proof applicable to a withholding of removal claim, "more likely than not," is "more stringent than the standard for asylum relief." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (internal quotation marks omitted). Thus, "[i]t is axiomatic that where an applicant fails to meet the burden for asylum, [s]he necessarily cannot meet the more stringent burden for withholding of removal." *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1249 n.3 (11th Cir. 2006). Therefore, our conclusion that Calix-Gonzalez cannot satisfy her burden to show asylum eligibility means that she cannot satisfy the more demanding burden that she bears to show eligibility for withholding of removal. *See Sepulveda*, 401 F.3d at 1233 ("[The petitioner] failed to establish past persecution or a well-founded fear of persecution on account of . . . [a]

13

protected ground to support her asylum claim.  On this basis, we hold there are no grounds for reversing the IJ's determination that she cannot establish entitlement to withholding of removal under the INA."). Accordingly, we deny her petition as to her withholding of removal claim.

## IV.    CONCLUSION

For the foregoing reasons, Calix-Gonzalez's petition is denied.

**PETITION DENIED.**