[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13502
Non-Argument Calendar
_____

Agency No. A071-979-181

IZEDDIN ALI ALYOUSEF,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 18, 2020)

Before BRANCH, GRANT, and FAY, Circuit Judges.

PER CURIAM:

Izeddin Ali Alyousef seeks review of the Board of Immigration Appeals' final order affirming the Immigration Judge's denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture.  He argues on appeal that the BIA incorrectly concluded that the IJ's adverse credibility determination was supported by the record.  We find that substantial evidence supported the adverse credibility determination because Alyousef had a history of fraudulent conduct, his claims were implausible, and he made inconsistent statements about his Jordanian citizenship and passport.  Accordingly, we deny Alyousef's petition.

I.

Alyousef, a Jordanian national, was lawfully admitted to the United States in July of 1991 on a tourist visa that authorized him to remain in the country for six months.  In November of 1991, Alyousef filed an asylum application claiming that he had experienced harassment and discrimination in Jordan due to his Palestinian origins.  In that initial application, Alyousef did not claim that he was politically active or a member of an organized group.  In 1993, removal proceedings were initiated against Alyousef, charging him with overstaying his visa and finding him removable for crimes involving moral turpitude due to two separate convictions for using another person's credit card without consent.  An immigration judge

2

sustained the charges of removability and denied his applications for asylum and withholding of removal.

Alyousef's appeals were unsuccessful, but he remained in the country. In 1999, he was arrested for making a false statement on a passport application, in violation of 18 U.S.C. § 1542, and for felony interstate transportation of stolen vehicles, in violation of 18 U.S.C. § 2312. While awaiting trial, Alyousef filed a motion to reopen his removal proceedings with the Board, claiming that his recent conversion from Islam to Christianity endangered his life if he returned to Jordan. His motion was denied. He was then sentenced to 24 months in jail. On August 5, 2003, DHS removed Alyousef to Jordan.

Alyousef illegally reentered the United States in 2004. In 2007, he attempted to legitimize his presence in the United States by filing for Permission to Reapply for Admission, to waive or excuse his reentry without permission after having been removed to Jordan. *See* 8 C.F.R. § 212.2(e). While this request was pending, Alyousef returned on his own volition to Jordan and, on August 27, 2007, he appeared at the United States Embassy in Amman to aid his application. He then illegally re-entered the United States in October of 2007 and became the father of a United States citizen child in December of 2007. The United States Department of State denied his application for Permission to Reapply for Admission on January 14, 2008.

Alyousef was then indicted in the United States District Court for the Southern District of Texas on charges of illegal reentry, in violation of 18 U.S.C. § 1326(a), and illegal reentry after being convicted of an aggravated felony, in violation of 18 U.S.C. § 1326(b)(2).  He pleaded guilty and was sentenced to 28 months in prison.  Once released, he began a three-year period of supervised release.  After violating the terms of that release, he was sentenced to 24 months in prison.

During that term in prison, DHS attempted to reinstate his prior removal order.  A hearing was held after Alyousef expressed a fear of returning to his homeland of Jordan.  During that hearing, Alyousef stated that he was detained upon his 2003 removal to Jordan and tortured because he had been a member of a pro-Palestinian opposition group in 1990 and 1991.  Alyousef also admitted that he had recently reconverted back to Islam from Christianity because of the difference in quality of food in prison during Ramadan.

Alyousef's mention of persecution due to political activities in 1990 and 1991 conflicted with his original asylum claim, in which he had not indicated that he was a member in any political group despite being asked that question.  Alyousef attributed that inconsistency to advice from his previous lawyer.  The Asylum Officer found that Alyousef had not established a reasonable fear of

4

persecution, and Alyousef did not further challenge that determination. DHS executed Alyousef's reinstated removal order and removed him to Jordan in 2014.

That long procedural history leads to the events at issue in the current case. In 2017, the Coast Guard interdicted a vessel near Fort Lauderdale, Florida. Alyousef was on board. He initially claimed that he was a United States citizen named "Richard Morales," and that he worked for the vessel's captain as a mechanic. His real identity was eventually ascertained, and he admitted that he had paid for transportation from the Bahamas to the United States.

Alyousef again claimed that he feared harm upon his return to Jordan, and was referred to a credible fear interview. His story at that interview (and at a second re-interview) was that he had re-converted from Islam to Christianity in 2015—and that he had actually been ordained a minister in the faith in 1998, a detail that had "slipped" his mind in his previous hearing. He also alleged that there had been an attempt on his life and that he feared retribution for reporting a possible terrorist to the United States.

Immigration proceedings began, but they were administratively closed when Alyousef was charged with illegal reentry, in violation of 18 U.S.C. § 1326(a), and illegal reentry after committing an aggravated felony, in violation of 18 U.S.C. § 1326(b)(2). Alyousef was sentenced to a term of eight months.

5

Removal proceedings began again in 2018, and Alyousef, in turn, again applied for asylum along the same grounds. The case proceeded to a merits hearing, after which the IJ deemed Alyousef not to be credible and denied Alyousef's applications for relief and protection. But the BIA remanded that initial determination of non-credibility; in part because some of the IJ's negative inferences regarding Alyousef's status as a Christian were "problematic," and in part because the IJ had not considered Alyousef's evidence of PTSD as an explanation for some gaps or contradictions in testimony.

On March 6, 2019, the IJ issued a written decision denying Alyousef's applications for relief and protection and concluding that Alyousef had not presented a credible claim for asylum and related protection. The BIA affirmed that decision, explaining that the IJ "properly took into account the respondent's history of committing fraudulent acts, implausibilities in his claim, and inconsistent statements regarding whether or not he considered himself a Jordanian citizen, and did not rely on discrepancies that may be attributed to symptoms of post-traumatic stress syndrome." The BIA also concluded that the IJ's finding was supported by Alyousef's inconsistent statements regarding whether he faced persecution in Jordan (as Alyousef stated that he traveled between Bahrain and Jordan for work freely and without problems). Finally, the BIA denied Alyousef's CAT claim, concluding that "the totality of the credible objective record evidence

6

did not establish that it is more likely than not that the respondent would be tortured by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity in Jordan." Alyousef petitioned this Court for review.

## II.

We review the BIA's decision as the final judgment, "except to the extent that the BIA has expressly adopted the IJ's decision." *Lyashchynska v. U.S. Att'y Gen.*, 676 F.3d 962, 966–67 (11th Cir. 2012) (citation omitted). Accordingly, we review both the IJ's decision and the BIA's decision to the extent that the BIA agreed with the IJ's reasoning. *Id.* We review factual determinations, including credibility determinations, under the deferential substantial evidence test. *See Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005).

We "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (internal quotation marks and citation omitted). We will reverse an administrative finding of fact "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

## III.

An alien who arrives in or is physically present in the United States may apply for asylum.  INA § 208(a)(1), 8 U.S.C. § 1158(a)(1).  The Attorney General or Secretary of the DHS has discretion to grant asylum if the alien meets the INA's definition of "refugee."  INA § 208(b)(1), 8 U.S.C. § 1158(b)(1).  The applicant carries the burden of proving statutory "refugee" status.  8 C.F.R. § 208.13(a); *see Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010).  To meet his burden to prove asylum, an alien must establish, among other things, that he was unwilling to return to, and is unable or unwilling to avail himself of the protection of, the country of his nationality or where he last habitually resided, because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.  INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A); *Ayala v. U.S. Att'y Gen.,* 605 F.3d 941, 948 (11th Cir. 2010).  Thus, to meet the burden of establishing eligibility for asylum, an alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily protected ground, or (2) a "well-founded fear" that the alien will be persecuted on account of a protected ground.  *Diallo*, 596 F.3d at 1332; 8 C.F.R. § 208.13(a), (b).

An alien seeking withholding of removal under the INA must show that his "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."

8

*Ruiz v. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006); *see* INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A).  "The burden of proof for withholding of removal, however, is more likely than not, and, thus, is more stringent than" the reasonable possibility standard for asylum relief.  *Ruiz*, 440 F.3d at 1257 (internal quotation marks and citation omitted).  If an applicant is unable to meet the standard for asylum, therefore, he is unable to qualify for withholding of removal.  *See Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1292 (11th Cir. 2006).

An applicant for asylum also bears the burden of satisfying the IJ that his testimony is credible, persuasive, and specific.  *See Lyashchynska*, 676 F.3d at 967.  An applicant's credible testimony may be sufficient to sustain his burden of proof, even without corroborating evidence.  *Id.*  A denial of relief may, however, be supported solely by an adverse credibility determination, especially where the applicant lacks corroboration for his testimony.  *See Mohammed v. U.S. Att'y Gen.*, 547 F.3d 1340, 1347 (11th Cir. 2008).  Conversely, where the applicant does produce corroborating evidence of persecution, the IJ must consider that evidence; in those instances, it is not sufficient for the IJ to rely solely on an adverse credibility determination as to the applicant's testimony.  *Forgue*, 401 F.3d at 1287.

A credibility determination may be based on the totality of the circumstances, including: (1) "the demeanor, candor, and responsiveness of the

9

applicant"; (2) "the inherent plausibility of the applicant's account"; (3) the consistency between the applicant's written and oral statements; (4) the internal consistency of each statement; and (5) the consistency of the applicant's statements with other record evidence.  INA § 240(c)(4)(C), 8 U.S.C. § 1229a(c)(4)(C).  An adverse credibility determination may be based on inconsistencies, inaccuracies, or falsehoods, regardless of whether they relate to "the heart of the applicant's claim." *Id.*

We have affirmed adverse credibility determinations based on: (1) an internal inconsistency in the respondent's testimony; (2) doubt that the respondent would be tortured or persecuted upon return because he had previously spent six months in his country unharmed and completed another thirty day trip without incident; and (3) the respondent's commission of "multiple acts of fraud"— including entering the United States by fraud and a false statement on his application for adjustment of status. *Alim v. Gonzales*, 446 F.3d 1239, 1255–57 (11th Cir. 2006).  Once the factfinder has made an adverse credibility finding, the applicant bears the burden of showing that the finding "was not supported by specific, cogent reasons or was not based on substantial evidence." *Forgue*, 401 F.3d at 1287 (internal quotation marks and citation omitted).  The factfinder does not have to accept the applicant's proffered explanation for inconsistencies if the

10

explanation does not compel a finding that the applicant was credible. *Shkambi v. U.S. Att'y Gen.*, 584 F.3d 1041, 1051 (11th Cir. 2009).

Alyousef's arguments on appeal pertain only to the IJ's and BIA's adverse credibility determinations. Accordingly, he has abandoned on appeal any arguments as to the merits of his CAT claim. *See Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 530 (11th Cir. 2013).

We conclude that substantial evidence supported the adverse credibility finding, as the IJ and the BIA appropriately considered Alyousef's history of fraudulent conduct, the implausibility of his claims, and his inconsistent statements regarding his Jordanian citizenship. *See* INA § 240(c)(4)(C), 8 U.S.C. § 1229a(c)(4)(C); *Alim*, 446 F.3d at 1255–57. Alyousef had a long history of fraudulent conduct, including his convictions for using another individual's credit card and his use of fake names and fake passports. Alyousef argues that his credit card offenses technically involved theft, not fraud. But they clearly involved holding himself out as an individual that he was not while purchasing goods, and there was no error in relying on those convictions as supporting his lack of credibility. And while the use of fraudulent documents to escape a country of persecution and enter the United States is not, on its own, a basis for denying asylum or drawing an adverse credibility determination, here Alyousef's use of false documents extended beyond those documents necessary to escape Jordan and

enter the United States.  *Cf. Nreka v. U.S. Att'y Gen.*, 408 F.3d 1361, 1368 (11th Cir. 2005).

Substantial evidence also supports the finding that Alyousef's claims that he would be harmed by the Jordanian government if he were to return were implausible.  In particular, his argument is belied by his voluntary return to Jordan without incident in 2007, as well as his period of travel between Bahrain and Jordan without incident in 2014.  And for the main negative incident he described in Jordan—that an unknown individual attempted to run him over in February 2017—Alyousef failed to provide compelling evidence that this activity was connected to a plausible claim for relief, instead speculating that those responsible might be the Jordanian government, ISIS, the Muslim Brotherhood, his own family members, or "anybody" else.

Finally, substantial evidence supports the finding that Alyousef made inconsistent statements regarding his Jordanian citizenship.  As the record makes clear, while he consistently professed to be a Jordanian citizen in his 2017 hearings, he then reversed course after the Board remanded his case, and did so without a logical explanation for that reversal.

Alyousef failed to show that the adverse credibility finding was not based on substantial evidence, and the record does not compel a reversal of that finding.  *See*

12

*Forgue*, 401 F.3d at 1287.  He does not raise any other grounds for granting him relief.  Accordingly, we deny Alyousef's petition.

**DENIED.**