[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-10543

Non-Argument Calendar

_____

GLEICIELLE DA SILVA SOUZA,
RENAN DOS SANTOS ARAUJO,
RYAN DA SILVA SANTOS ARAUJO,

                                Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

                                Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

Agency No. A220-636-571

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER, Circuit Judges.

PER CURIAM:

Gleicielle Da Silva Souza, a native of Brazil, petitions on behalf of herself and her husband and minor son for review of an order affirming the denial of her applications for asylum and withholding of removal under the Immigration and Nationality Act and for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. 8 U.S.C. §§ 1158(a), 1231(b)(3). The Board of Immigration Appeals affirmed that Da Silva Souza was ineligible for asylum and withholding of removal because she had not established past persecution or that Brazil was unable or unwilling to protect her from future persecution. The Board also agreed that Da Silva Souza was ineligible for relief under the Convention because she had not established that she would be tortured in Brazil by or at the acquiescence of its officials. We deny the petition.

We review only the decision of the Board, except to the extent that the Board expressly adopted or agreed with the immigration judge's decision. *Jathursan v. U.S. Att'y Gen.*, 17 F.4th 1365, 1372 (11th Cir. 2021). We review factual findings for substantial evidence and must affirm if the findings are "supported by reasonable, substantial, and probative evidence on the record considered as a

whole." *Id.* (citation and internal quotation marks omitted). We can reverse "only if the record compels reversal, and the mere fact that the record may support a contrary conclusion is insufficient to justify reversal." *Id.* (citation and internal quotation marks omitted). We review claims of legal error *de novo*. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010). We do not address Da Silva Souza's challenges to findings that the Board did not address. *See Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).

Substantial evidence supports the finding that Da Silva Souza did not suffer past persecution. To establish eligibility for asylum, the petitioner bears the burden of establishing past persecution or a well-founded fear of future persecution. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006). Persecution is "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (citation and internal quotation marks omitted). A petitioner need not have been physically harmed to prove persecution, *see Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1233 (11th Cir. 2007), but mere harassment, even by death threats, is not persecution, *see Sepulveda*, 401 F.3d at 1229, 1231 (holding that menacing phone calls and death threats to a noncitizen did not compel a finding of persecution). A "credible death threat by a person who has the immediate ability to act on it" constitutes persecution even if it is not carried out. *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1333–34 (11th Cir. 2010). Da Silva Souza and her family entered the United States in 2021 and had lived in Brazil for the relevant period from 2014 to 2021. She testified that her

husband was accused of murdering another man in 2014 and the victim's brother, Maxwell, threatened to kill her family. She and her husband testified that they received threatening phone calls and messages passed on from his extended family but were never physically harmed. These threats do not constitute persecution. *See Sepulveda*, 401 F.3d at 1231. And Maxwell did not have "the immediate ability" to carry out his threats because he had been imprisoned since 2014. *See Diallo*, 596 F.3d at 1333–34. Da Silva Souza's husband's testimony that Maxwell could have ordered gang members to kill them is undercut by Da Silva Souza's testimony that Maxwell failed to carry out his threats from 2014 to 2021 and did not know where they lived. And while her husband's testimony might support a contrary conclusion, it does not compel reversal of the finding that Da Silva Souza had not established past persecution. *See Jathursan*, 17 F.4th at 1372.

Substantial evidence also supports the finding that Da Silva Souza had not established that the Brazilian government was unable or unwilling to protect her from future persecution. To establish persecution by a private actor, an asylum applicant must prove that her "home country is unable or unwilling to protect" her. *Ayala*, 605 F.3d at 950. Da Silva Souza testified that no one in the family filed a police report about Maxwell's threats or formally sought help from the authorities, and her husband's testimony that he spoke informally with police officers who said they could not do anything is insufficient to compel reversal because an informal discussion on the street is not dispositive of how the police might treat a formal complaint. Maxwell was incarcerated for other crimes,

establishing that the authorities were willing and able to investigate and to specifically respond to Maxwell's criminal activities. *See Sama v. U.S. Att'y Gen.*, 887 F.3d 1225, 1234 (11th Cir. 2018) (holding that an applicant did not establish that police were unable or unwilling to protect him when evidence established that police were willing and able to investigate criminal behavior by the alleged persecutors). And State Department and Human Rights Watch reports documenting instances of police brutality and misconduct do not establish that any corruption caused local police to be unresponsive to citizens' reports of threats of violence. The record does not compel reversal of the finding that Da Silva Souza had not established that the Brazilian government was unable or unwilling to protect her.

Da Silva Souza's failure to establish that she is eligible for asylum necessarily defeats her argument that she is otherwise eligible for withholding of removal. *See Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1352 (11th Cir. 2009). The Board did not legally err in concluding she was necessarily ineligible for withholding of removal by failing to establish eligibility for asylum because the burden of proof is the same for both claims except that the standard for withholding of removal is higher than that of asylum. *See D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 819 (11th Cir. 2004) (holding that a petitioner must establish that it is "more likely than not" that she would be persecuted upon removal for a withholding of removal claim); *Meja v. U.S. Att'y Gen.*, 498 F.3d 1253, 1256–57 (11th Cir. 2007) (holding that an asylum applicant must establish a

"reasonable possibility" of persecution upon return, which is less than "more likely than not").

Substantial evidence also supports the finding that Da Silva Souza had not established that it was more likely than not she would be tortured in Brazil by or with the acquiescence of its officials. To be eligible for relief under the Convention, a petitioner must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The act must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." *Id.* § 1208.18(a)(1). Da Silva Souza and her husband testified that Maxwell was still incarcerated, had not carried out his threats in the seven years he had been threatening them, and did not know where they lived. And the record supports a finding that Da Silva Souza had not established that the Brazilian government would participate in or acquiesce to Maxwell torturing her. Brazilian police arrested and imprisoned Maxwell for other criminal activities, so they are able and willing to stop Maxwell. And the government corruption documented by the State Department and Human Rights Watch reports dealt with police brutality and white-collar crime by politicians, not corruption in ignoring gang violence. The record does not compel reversal of the finding that Da Silva Souza had not established that it was more likely than not she would be tortured in Brazil by or with the acquiescence of its officials.

24-10543                Opinion of the Court                7

We **DENY** the petition for review.